
**Freshfields Bruckhaus Deringer US LLP**

**By ECF and Email**

The Honorable Andrew L. Carter, Jr.
United States District Court
Southern District of New York
40 Foley Square, Room 435
New York, NY 10007

New York
601 Lexington Avenue
31st Floor
New York, NY  10022
T   +1 212 277 4000 (Switchboard)
     +1 212-277-4041 (Direct)
F   +1 646-521-5641
E   madlyn.primoff@freshfields.com
www.freshfields.com

July 19, 2021

**Re:**   ***Kennedy Lewis Partners Master Fund LP et al. v. Abry Partners, LLC et al.,***
**Case No. 1:21-cv-04690-ALC (Request for Pre-Motion Conference)**

Dear Judge Carter:

We represent Wilmington Savings Fund Society, FSB ("**WSFS**" or the "**Agent**"), one of the defendants in the above-referenced action.  WSFS is the successor Administrative Agent and Collateral Agent under the Credit Agreement, Dkt. 1-1, and Security Agreement, Dkt. 1-2, (collectively, the "**Agreements**") governing this dispute.  The other defendants in this action, represented by Gibson Dunn, comprise majority "Required Lenders" under the Credit Agreement. WSFS writes to explain its anticipated motion to dismiss or transfer venue, request a pre-motion conference, and join the letter contemporaneously submitted by the Required Lenders.

As set forth in the Complaint filed by Plaintiffs, who are disgruntled minority lenders under the Credit Agreement, the Town Sports debtors ("**Debtors**") filed for Chapter 11 before the Bankruptcy Court in Delaware on September 14, 2020.  As permitted by the Credit Agreement, the Required Lenders formulated and agreed to a transaction (the "**Stalking Horse Transaction**" or "**S.H. Transaction**") with the Debtors whereby the Required Lenders would cause $80 million of loans under the Credit Agreement to be credit bid on behalf of or transferred to a new entity ("**NewCo**") and NewCo would use those loans as currency (*i.e.*, a "credit bid"), in part, to purchase the Debtors' assets.  This S.H. Transaction was submitted to the Bankruptcy Court for approval. The Bankruptcy Court approved the sale ("**Sale**") to NewCo and, subsequently, expressly deemed the credit bid to have occurred.

Notwithstanding that the Required Lenders were authorized by the Agreements to proceed with the S.H. Transaction and that the Bankruptcy Court directed the Sale (including the credit bid) to occur, the gravamen of the Complaint is that WSFS should somehow have stopped the Sale and the credit bid.  Plaintiffs conveniently ignore the fact that WSFS was not appointed the Agent under the Agreements until **after** the S.H. Transaction was negotiated and submitted to the Bankruptcy Court for approval.  Furthermore, Plaintiffs' claims are belied by the express terms of the Credit Agreement, detailing the duties of the Agent, and imposing absolutely no relevant obligation whatsoever on the Agent.  Finally, Plaintiffs' unsupported assertion that the Agent was grossly negligent is nothing but a transparent attempt to evade the exculpation clauses of the Credit Agreement, which mandate dismissal of all claims against the Agent.

**Freshfields Bruckhaus Deringer** US LLP

**Plaintiffs' Claims Against WSFS Fail Because the S.H. Transaction Was Filed With the Bankruptcy Court Before WSFS Became the Agent**

As permitted by the governing Credit Agreement, the Required Lenders negotiated the S.H. Transaction, on behalf of themselves and Plaintiffs (as minority lenders), before WSFS was appointed the Agent. On October 2, 2020, the irrevocable S.H. Agreement was submitted to the Bankruptcy Court for approval along with certain bid procedures, specifying that the contemplated Sale would be subject to higher and better offers for the Debtors' assets. Ex. A, Bk. Dkt. 160 (Sale and Bid Procedures Motion).[1]  WSFS played no role whatsoever in the submission of the S.H. Transaction Bid, nor could it have. WSFS was not appointed as the Agent until October 6, 2020 – four days *after* submission of the S.H. Transaction. *See* Ex. B (Agency Assignment Agreement).

On October 9, 2020, the Bankruptcy Court entered an order approving the bid procedures for the Sale. Ex. C, Bk. Dkt. 208. The bid procedures stated that: "[i]f no Qualified Bids other than the Stalking Horse Bid are received by the Bid Deadline, then the Debtors shall cancel the Auction, and designate the Stalking Horse Bid as the Successful Bid and pursue entry of the Sale Order approving a Sale of the Assets to the Stalking Horse Bidder . . . ." Ex. D, Bk. Dkt. 208-1 (Bid Procedures) at IX. No bids were submitted by the October 26, 2020 deadline. Ex. E, Bk. Dkt. 639 (Sale Order) ¶ L. Consequently, the Bankruptcy Court entered an order (the "**Sale Order**") on November 4, 2020, approving the Sale to NewCo. The Bankruptcy Court expressly found and determined that the Agent "on behalf of [all] Prepetition Lenders, has the right under section 363(k) of the Bankruptcy Code and is authorized by this Court pursuant to the Bid Procedures Order and this Sale Order, to credit bid the Credit Bid Consideration." *Id.* ¶ X.

When it became apparent that NewCo would not be funded as the Required Lenders had originally anticipated, they sought to stop the closing of the Sale. Ex. F, Bk. Dkt. 710 (Emergency Motion). However, the Bankruptcy Court denied that request, finding at length on the record that "Clearly the credit bid has been contemplated from day one. . . . [T]his was a fundamental part of the bid that was the stalking horse bid that went out for competing bids . . . . I think the documents made it clear that that contribution [the right to credit bid] already [occurred] -- and to the extent that it didn't already occur pursuant to some sort of documents being exchanged among the parties I deemed it as a matter of law and to the extent I have to exercise equitable power here it did occur. . . ." Ex. G, Bk. Dkt. 777 (Nov. 30, 2020 Hearing Tr.) at 25:17-28:14; Ex. H, Bk. Dkt. 721 (Emergency Motion Order) at 2. The Sale then closed.

**Plaintiffs Lack Standing to Pursue Any Claims Against the Agent – Credit Agreement 12.04**

Disgruntled with this turn of events, Plaintiffs now seek to hold the Agent liable for breaching the Agreements even though the Credit Agreement (1) expressly denies Plaintiffs standing to pursue these claims against the Agent, (2) authorized the Required Lenders to initiate and carry out the Sale, as they did, (3) makes it unmistakably clear that the Agent had no duty whatsoever to

---

[1] References to "Br. Dkt." are to docket entries in *In re Town Sports International, LLC., et al.*, Case No. 20-12168 (Bankr. D. Del.) (Sontchi, J.).

Freshfields Bruckhaus Deringer US LLP

somehow attempt to stop the Sale from closing, especially in the face of the Bankruptcy Court's determinations, and (4) fully exculpates the Agent from the claims asserted despite Plaintiffs' naked assertions of gross negligence, which fail as a matter of law.

Based on Section 12.04 of the Credit Agreement, Plaintiffs lack standing to pursue claims against the Agent. Credit Agreement § 12.04 (No lender "shall have any right of action whatsoever against the Administrative Agent as a result of the Administrative Agent acting or refraining from acting hereunder or under any other Credit Document in accordance with the instructions of Required Lenders."). Given that the Bankruptcy Court determined that the credit bid instruction had occurred, the claims against the Agent are barred by Section 12.04 of the Credit Agreement.

## Count 2 Fails Based on Section 12.02 of the Credit Agreement

Plaintiffs' breach of contract claim against the Agent must fail based on the straightforward application of Section 12.02 of the Credit Agreement. Count 2 alleges that "[b]y standing by and doing nothing to prevent the transfer of the Syndicate Lenders' secured loans, the Agent was grossly negligent and materially breached the [Agreements]," Compl. ¶ 60; or, alternatively, "the Agent was grossly negligent and materially breached the Agreements by transferring the Syndicate Lenders' valuable secured loans to NewCo in exchange for virtually nothing." *Id.* ¶ 61.

Plaintiffs point to no express obligation that the Agent has breached, nor can they. Thus, Plaintiffs have not stated any claim upon which relief can be granted based on the plain language of Section 12.02 of the Credit Agreement, which makes it unmistakably clear that: "The Administrative Agent shall not have any duties or responsibilities except those expressly set forth in this Agreement and in the other Credit Documents. . . . The duties of the Administrative Agent shall be **mechanical and administrative in nature**; the Administrative Agent **shall not have by reason of this Agreement or any other Credit Document a fiduciary relationship in respect of any Lender** . . . and nothing in this Agreement or in any other Credit Document, expressed or implied, is intended to or shall be so construed as to impose upon the Administrative Agent any obligations in respect of this Agreement or any other Credit Document except as expressly set forth herein or therein." Credit Agreement § 12.02(a) (emphasis added). Furthermore, Plaintiffs' allegations in Count 2 of breach of Sections 12.02 and 12.10 of the Credit Agreement and Section 7.1 of the Security Agreement are firmly belied by the Bankruptcy Court's determination (quoted and cited above) that the credit bid had occurred upon the instruction of Required Lenders or was deemed to have occurred.

Count 2 also fails to plausibly plead gross negligence, which bars liability under the broad exculpation clauses protecting the Agent from this suit. Credit Agreement §§ 12.02(a), 12.10(c). In order to properly plead gross negligence, the Complaint must "set forth actions by defendant evincing a reckless disregard for the rights of plaintiff or smacking of intentional wrongdoing." *Retty Fin., Inc. v. Morgan Stanley Dean Witter & Co.*, 293 A.D.2d 341, 341 (1st Dep't 2002) (internal citation and quotation marks omitted). Plaintiffs' conclusory and unsupported assertions of gross negligence do not come close to the showing that must be made to sustain a claim for gross negligence, and thus should be dismissed. *See Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*, No. 03-cv-1537 (MBM), 2003 WL 23018888, at *12 (S.D.N.Y. Dec. 22,

 Freshfields Bruckhaus Deringer US LLP

2003), *aff'd*, 110 F. App'x 191 (2d Cir. 2004).  Nor could they in view of the authorized actions pursued by the Required Lenders as well as the Bankruptcy Court's determinations throughout the Chapter 11 case.

**Claims Asserted Against the Agent in Count 3 Fail Based on 11 U.S.C. § 363(f)**

Count 3 improperly alleges that the Required Lenders, or alternatively the Agent, breached Section 13.12(a) of the Credit Agreement by releasing the collateral securing all lenders' loans (both Required Lenders and Plaintiffs) without Plaintiffs' consent.  *Id.* ¶¶ 67–69.  Plaintiffs' contentions must fail because this was not a release of liens, but rather the exercise of a remedy under the Agreements, which was authorized pursuant to Section 363(f) of the Bankruptcy Code, as made clear by the express provisions of the Bankruptcy Court's Sale Order.  *See, e.g.*, Ex. E ¶ R ("The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full; therefore, the Debtors may sell the Acquired Assets free and clear of any interest [liens] in the property.").  Accordingly, Count 3 should be dismissed.

Should the Court wish to discuss any of these matters, we are available at Your convenience.

Respectfully,

/s/ Madlyn Gleich Primoff
Madlyn Gleich Primoff
FRESHFIELDS BRUCKHAUS DERINGER US LLP
*Counsel for Defendant Wilmington Savings Fund Society, FSB*

CC:  Counsel of Record