# MCKOOL SMITH

Kyle A. Lonergan
Direct Dial:  (212) 402-9425
klonergan@mckoolsmith.com

One Manhattan West
395 9th Avenue, 50th Floor
New York, NY 10001

Telephone: (212) 402-9400
Facsimile: (212) 402-9444

July 23, 2021

**Via ECF and E-Mail**

The Honorable Andrew L. Carter, Jr.
United States District Judge
United States District Court Southern District of New York
40 Foley Square, Room 435
New York, NY 10007

> Re:   ***Kennedy Lewis Partners Master Fund, et al. v. Abry Partners, LLC,*** **et al.,**
> **21-cv-04690**

Dear Judge Carter:

We represent Plaintiffs Kennedy Lewis Partners Master Fund LP and Kennedy Lewis Partners Master Fund II LP ("Plaintiffs"), and write in response to Lender Defendants' July 19, 2021 letter requesting a pre-motion conference ("Letter").  As set forth in the Complaint, this dispute arises from the disposition of $80 million of a secured loan ("Loan") made by Plaintiffs, Lender Defendants and others (collectively, "Syndicate Lenders") to Town Sports International LLC ("Town Sports"), which was governed by the Credit and Security Agreements ("Agreements").  After Town Sports filed for bankruptcy in September 2020, Lender Defendants orchestrated the sale of Town Sports' assets backing the Loan to NewCo,[1] a newly-formed entity to be owned in part by the Syndicate Lenders.  As part of that sale, despite having no authority to do so under the Agreements, Lender Defendants contributed $80 million of the Loan to NewCo so that it could be included as part of the purchase price for Town Sports' assets.  The assets would then be received by NewCo free and clear of the Syndicate Lenders' liens.  While the Lender Defendants believed they would receive newly issued debt obligations from NewCo and that NewCo would receive close to $50 million in funding as part of the transaction, they failed to secure binding commitments for such debt and funding, resulting in the Loan being "credit bid" in exchange only for an equity interest in a severely undercapitalized NewCo.  In short, the Lender Defendants unilaterally credit bid the Loan in contravention of the Agreements, failed to obtain binding commitments for the debt and funding of NewCo, and gave away $80 million in secured loans and the collateral backing the remaining $87 million in secured loans for, in their own words, "zero recovery."  This was nothing short of an unprecedented, disastrous result caused by the improper actions (and inactions) of the Defendants.

The Letter confirms the Complaint's allegations.  It is undisputed that Lender Defendants, as Required Lenders, may only take actions on behalf of the Syndicate Lenders in accordance with the Agreements.  Dkt. 1-1 § 12.10(a).  The Security Agreement authorizes only the Agent, acting

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the Complaint (Dkt. No. 1).

**McKool Smith**
**A Professional Corporation • Attorneys**
**Austin | Dallas | Houston | Los Angeles | Marshall | New York | Washington, DC**

July 23, 2021
Page 2

pursuant to the Required Lenders' instruction, to realize upon the Loan collateral, including pursuant to a credit bid. Dkt. 1-2 § 7.1. Lender Defendants do not contest that they never gave an instruction to the Agent to credit bid the Loan, but engaged in the credit bid on their own. Letter at 1-2. This usurping of the Agent's authority is a clear breach of the Agreements.[2]

Lender Defendants' sole rebuttal appears to be that, because they possessed the authority to direct the Agent to credit bid the Loan, they had the ability to credit bid themselves. This is directly contrary to the language of the Agreements, which state that the collateral may be realized upon "only by the action of the Collateral Agent acting upon the instructions of the Required Secured Creditors[.]" Dkt. 1-2 § 7.1. Lender Defendants' newfound position is directly contrary to their position in the Emergency Sale Motion, where they admitted that "the ability to realize upon security, including pursuant to a credit bid, is limited to the Agent, acting in its capacity as collateral agent." Dkt. No. 41-6 at ¶ 18.[3] In denying the Emergency Sale Motion, Judge Sontchi agreed with the Lender Defendants that the Agent was the only party with the ability to credit bid the Loan, and proceeded to find that the Agent did so either as a matter of fact or equity. In making this ruling, Judge Sontchi did not hold an evidentiary hearing and did not make any definitive factual findings about whether the Agent credit bid the Loan. Instead, the court held only that, based on the conduct of the Lender Defendants, it was too late to object to the sale and that the Agent as a matter of fact or equity credit bid the Loans.[4] Given that it is undisputed that the Agent did not in fact credit bid the Loan, and thus that the Lender Defendants took actions (without opposition from the Agent) that resulted in the Agent credit bidding the Loan as a matter of equity (without receiving an instruction), the Lender Defendants violated the Agreements.

The Lender Defendants' arguments fail for the following, additional reasons:

**Claim Preclusion, Issue Preclusion, and Law of the Case are Inapplicable:** For claim preclusion, "a valid final judgment bars future actions between the same parties on the same cause of action." *Parker v. Blauvelt Volunteer Fire Co.*, 93 N.Y.2d 343, 347 (1999). Similarly, issue preclusion requires that the issue previously litigated be "identical" to the one before the court. *Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir. 1995). The doctrine of law of the case applies "within the confines of a single action on trial or appeal" and not "between separate actions[.]" *Cho v. Blackberry Ltd.*, 991 F.3d 155, 168 n.11 (2d Cir. 2021). These doctrines cannot apply to the instant action for the simple reason, among others, that Plaintiffs' breach of contract claims were never before the bankruptcy court, much less ruled upon. As discussed above, Judge Sontchi only ruled that the Agent, as a matter of fact or equity, credit bid the Loan. This ruling in no way addressed whether the Lender Defendants' conduct breached the Agreements. Indeed, Plaintiffs' breach of contract claims could not have even been raised in the prior action because until Judge Sontchi denied the Emergency Sale Motion and the sale closed, Plaintiffs had not suffered injury or damages.

**The Claims Are Not Barred by the "No Action" Clause:** Lender Defendants' contention that Section 7.1 of the Security Agreement bars Plaintiffs' claims is incorrect and relies on an unsupportable reading of this provision. Section 7.1 concerns "Events of Default" and delineates

---

[2] Lender Defendants make much of the fact that Plaintiffs did not object to the credit bid in the bankruptcy, but ignore the fact that they kept Plaintiffs in the dark, leaving Plaintiffs reasonably to assume that the Lender Defendants and Agent were complying with the Agreements and that Syndicate Lenders would receive value in exchange for the credit bid. *See* Dkt. No. 1 at ¶ 32.

[3] *See also id.* at ¶ 8 ("The Agent [is] the party with the right to credit bid on behalf of the Prepetition Lenders").

[4] 11/30 Hearing Tr., Dkt. No. 41-7 at 27:16-22.

July 23, 2021
Page 3

the various remedies available to the Agent to realize upon the collateral, while restricting the ability of an individual lender from doing so. Such provisions are intended to "prevent[] minority securityholders from pursuing litigation against the issuer, in favor of a single action initiated by a Trustee upon request of a majority of the securityholders." *Quadrant Structured Prods. Co., Ltd. v. Vertin*, 23 N.Y.3d 549, 565 (2014). This provision does not bar a party from asserting a breach of contract against the other parties to the Agreements. Indeed, under such a reading, if only the Agent could enforce the terms of the Security Agreement, then the Agent would be able to breach the Agreement with impunity. *See Cruden v. Bank of N.Y.*, 957 F.2d 961, 968 (2d Cir. 1992) ("it would be absurd to require the debenture holders to ask the Trustee to sue itself."). For this reason, where "a 'no action' provision applies by its terms to only claims relating to an 'Event of Default' seeking payment on the notes themselves, such clauses do not prevent noteholders from bringing extra-contractual tort claims or breach of contract claims that are not of the type to which the 'no action' provision, by its terms, applies." *Metro. W. Asset Mgmt., LLC v. Magnus Funding, Ltd.*, 2004 U.S. Dist. LEXIS 11761, at *14 (S.D.N.Y. June 24, 2004); *Howe v. Bank of N.Y. Mellon*, 783 F. Supp. 2d 466, 473 (S.D.N.Y. 2011).

**The Complaint Alleges Specific Breaches of the Agreements:** The Lender Defendants argue that the Agreements' plain language provided them with the authority to credit bid the Loan, and that Plaintiffs "identify no contractual provision" breached by doing so. This is false. As stated above, Section 12.10(a) of the Credit Agreement authorizes the Lender Defendants to act only in accordance with the Security Agreement, which pursuant to Section 7.1, gives the sole right to credit bid the Loan to the Agent. By failing to instruct the Agent and contributing the credit bid, the Lender Defendants breached both of these provisions. The Lender Defendants also breached Section 13.12 of the Credit Agreement by releasing the liens on the collateral without obtaining Plaintiffs' consent. *See Prudential Ins. Co. of Am. v. WestLB AG, N.Y. Branch*, 37 Misc. 3d 1208(A), 1208A (Sup. Ct. 2012)(finding that, pursuant to a virtually identical provision, a credit bid transaction that disfavored certain lenders was an "instance of releasing 'all or substantially all of the collateral,'" which "required ... the unanimous consent of the lenders.")

**New York is the Proper Forum for this Action:** In asserting that this case should be transferred to Delaware, Lender Defendants ignore the Credit Agreement's forum selection clause, which requires the parties to bring "any legal action" relating to the Credit Agreement in New York. Dkt. No. 1-1 § 13.08. This forum selection clause is prima facie enforceable. *Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 63 (2013)("a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases."); *see also ICICI Bank, Ltd. v. Essar Glob. Fund Ltd.*, 565 B.R. 241, 244 (S.D.N.Y. 2017)(denying motion to transfer breach of contract claim to related bankruptcy proceeding due to forum selection clause). Beyond this, *every single factor* assessed under 28 U.S.C. § 1404(a) weighs in favor of keeping this action in New York. *See Credit Suisse Ag v. Appaloosa Inv. Ltd. P'shp. I*, No. 15-cv-3474(SAS), 2015 U.S. Dist. LEXIS 120020, at *20-21 (S.D.N.Y. Sep. 9, 2015).

Respectfully submitted,

*/s/ Kyle A. Lonergan*

Kyle A. Lonergan
MCKOOL SMITH, P.C.

July 23, 2021
Page 4

*Counsel to Plaintiffs Kennedy Lewis Partners Master Fund LP and Kennedy Lewis Partners Master Fund II LP*

cc:    All counsel of record (via ECF)