UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

KENNEDY LEWIS PARTNERS MASTER
FUND LP AND KENNEDY LEWIS
PARTNERS MASTER FUND II,

             Plaintiffs,

   -against-

ABRY PARTNERS, LLC, APEX CREDIT
PARTNERS LLC, CIFC ASSET
MANAGEMENT LLC, ELLINGTON
MANAGEMENT GROUP, L.L.C.,
TRIMARAN ADVISORS MANAGEMENT,
L.L.C., AND WILMINGTON SAVINGS
FUND SOCIETY, FSB,

             Defendants.

-----------------------------------------------------------x

Case No. 21-cv-4690 (ALC)

ORAL ARGUMENT REQUESTED

## THE LENDER DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO DISMISS OR TRANSFER VENUE

GIBSON, DUNN & CRUTCHER LLP
Mary Beth Maloney
David P. Salant
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000

*Attorneys for the Lender Defendants*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND .............................................................................................................. 5

    A.    Plaintiffs and the Lender Defendants Were Secured Creditors of Town Sports............. 5

    B.    Key Contractual Provisions: (1) "Majority Rules," (2) the Collateral Agent, and (3) the "No-Action" Clause.................................................................................... 5

    C.    Town Sports Declares Bankruptcy in Delaware and Plaintiffs Appear in the Bankruptcy Action. .......................................................................................... 7

    D.    The Lender Defendants Arrange a Sale Using a "Credit Bid." ................................. 8

    E.    The Bankruptcy Court, Following a Hearing, Issues the First Sale Order; Plaintiffs Do Not Object. .................................................................................... 9

    F.    When the Sale Plan Falters, the Bankruptcy Court Holds a Hearing and Issues the Second Sale Order; Plaintiffs Again Do Not Object............................................ 10

    G.    Five Months Later, Plaintiffs Bring This Action. ..................................................... 12

LEGAL STANDARD ..................................................................................................... 13

ARGUMENT ................................................................................................................. 13

I.    Plaintiffs' Complaint Is Barred by the Doctrines of *Res Judicata* and Collateral Estoppel....................................................................................................... 13

    A.    *Res Judicata* Bars Plaintiffs' Claims. .................................................................. 13

    B.    Collateral Estoppel Bars Plaintiffs' Claims. ......................................................... 15

II.    Plaintiffs' Claims Are Barred by the No-Action Clause in the Security Agreement. .......... 18

III.    Plaintiffs Fail to State Cognizable Theories of Duty, Breach, Causation, or Damages........ 20

IV.    Any Surviving Claims Should Be Transferred to the Delaware Bankruptcy Court. ............ 23

CONCLUSION............................................................................................................... 25

# TABLE OF AUTHORITIES

**CASES**

*In re Adelphia Recovery Tr.*,
    634 F.3d 678 (2d Cir. 2011)...................................................................................3, 14, 15

*In re Aiolova*,
    496 B.R. 123 (Bankr. S.D.N.Y. 2013)..............................................................................14

*Allen v. McCurry*,
    449 U.S. 90 (1980)............................................................................................................13

*In re Am. Preferred Prescription, Inc.*,
    255 F.3d 87 (2d Cir. 2001)................................................................................................14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..........................................................................................................13

*Audax Credit Opportunities Offshore Ltd. v. TMK Hawk Parent, Corp.*,
    No. 565123/2020, Dkt. No. 171, 72 Misc. 3d 1218(A) (Sup. Ct. N.Y. Cnty. 2021)..............18

*In re Bel Air Square Joint Venture*,
    100 F.3d 942 (2d Cir. 1996)..............................................................................................14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..........................................................................................................13

*Berman v. Sugo LLC*,
    580 F. Supp. 2d 191 (S.D.N.Y. 2008)...............................................................................13

*CCM Pathfinder Pompano Bay, LLC v. Compass Fin. Partners LLC*,
    396 B.R. 602 (S.D.N.Y. 2008)..........................................................................................24

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002)................................................................................................7

*In re Chrysler LLC*,
    405 B.R. 84 (Bankr. S.D.N.Y. 2009)................................................................................23

*In re Clinton St. Food Corp.*,
    254 B.R. 523 (Bankr. S.D.N.Y. 2000)..............................................................................15

*Credit Suisse AG v. Appaloosa Inv. Ltd. P'ship I*,
    No. 15 Civ. 3474 (SAS), 2015 WL 5257003 (S.D.N.Y. Sept. 9, 2015)...........................4, 24

*Cruden v. Bank of N.Y.*,
    957 F.2d 961 (2d Cir. 1992)..............................................................................................20

*Deutsche Oel & Gas S.A. v. Energy Cap. Partners Mezzanine Opportunities Fund A, LP*,
No. 19 Civ. 1058 (RA), 2020 WL 5814233 (S.D.N.Y. Sept. 30, 2020)...........................24, 25

*Eaton Vance Management v. Wilmington Sav. Fund Soc., FSB*,
2018 WL 1947405 (Sup. Ct. N.Y. Cnty. 2018) .......................................................................18

*Falbaum v. Pomerantz*,
19 F. App'x 10 (2d Cir. 2001) ........................................................................................3, 16

*Feldbaum v. McCrory Corp.*,
No. CIV. A. 11866, 1992 WL 119095 (Del. Ch. June 2, 1992) ...............................................18

*Fernandez v. New England Motor Freight, Inc.*,
No. 12 Civ. 6536 (VEC), 2015 WL 4002233 (S.D.N.Y. July 1, 2015)...................................21

*Fifty CPW Tenants Corp. v. Epstein*,
16 A.D.3d 292 (1st Dep't 2005) ....................................................................................3, 13

*Gottlieb v. SEC*,
723 F. App'x 17 (2d Cir. 2018) .............................................................................................25

*Howe v. Bank of N.Y. Mellon*,
783 F. Supp. 2d 466 (S.D.N.Y. 2011).....................................................................................20

*Ibela v. Allied Universal*,
No. 20 Civ. 3800 (ALC), 2021 WL 3077482 (S.D.N.Y. July 20, 2021)...............................13

*In re Manville Forest Prods. Corp.*,
896 F.2d 1384 (2d Cir. 1990)..................................................................................................24

*Marshall v. Hyundai Motor Am.*,
51 F. Supp. 3d 451 (S.D.N.Y. 2014).......................................................................................20

*Matter of Trusts Established under the Pooling & Serv'g. Agreements relating to the
Wachovia Bank Com. Mortg. Tr. Com. Mortg. Pass-Through Certs.*,
375 F. Supp. 3d 441 (S.D.N.Y. 2019).....................................................................................19

*McMahan & Co. v. Wherehouse Ent., Inc.*,
65 F.3d 1044 (2d Cir. 1995).....................................................................................................18

*McMahan & Co. v. Wherehouse Ent., Inc.*,
859 F. Supp. 743 (S.D.N.Y. 1994), *aff'd in relevant part and rev'd in part on
other grounds*, 65 F.3d 1044 (2d Cir. 1995) ...................................................................18, 19

*Metro. W. Asset Mgmt., LLC v. Magnus Funding, Ltd.*,
2004 WL 1444868 (S.D.N.Y. June 25, 2004) ........................................................................20

*O'Brien v. City of Syracuse*,
    54 N.Y.2d 353 (1981) ..................................................................................14

*In re Old CarCo LLC*,
    No. 09 Civ. 8875 (CM), 2010 WL 9461648 (S.D.N.Y. July 2, 2010), *aff'd sub nom.*
    *In re Old CarCo LLC*, 438 F. App'x 30 (2d Cir. 2011)............................................15

*Penberthy v. Chickering*,
    No. 15 Civ. 7613 (PAE), 2017 WL 176312 (S.D.N.Y. Jan. 13, 2017)....................................14

*Perks v. TD Bank, N.A.*,
    444 F. Supp. 3d 635 (S.D.N.Y. 2020)..............................................................20, 22

*Proctor v. LeClaire*,
    715 F.3d 402 (2d Cir. 2013)..........................................................................16

*Pulka v. Edelman*,
    40 N.Y.2d 781 (1976) ................................................................................21

*Quadrant Structured Prod. Co. v. Vertin*,
    23 N.Y.3d 549, 16 N.E.3d 1165 (2014)...............................................................20

*In re Soundview Elite Ltd.*,
    No. 14 Civ. 7045 (JPO), 2014 WL 7009070 (S.D.N.Y. Dec. 12, 2014) ................................16

*Sure-Snap Corp. v. State St. Bank & Tr. Co.*,
    948 F.2d 869 (2d Cir. 1991)........................................................................2, 14

*In re Temtechco, Inc.*,
    No. 95-00596, 1998 WL 887256 (Bankr. D. Del. Dec. 18, 1998).........................................16

*Victor v. Riklis*,
    No. 91 Civ. 2897 (LJF), 1992 WL 122911 (S.D.N.Y. May 15, 1992).........................3, 18, 19

*In re Waypoint Leasing Holdings Ltd.*,
    607 B.R. 143 (Bankr. S.D.N.Y. 2019)............................................................16, 17

*Williams v. N.Y.C. Hous. Auth.*,
    816 F. App'x 532 (2d Cir. 2020) ....................................................................8

**STATUTES**

11 U.S.C. § 363...............................................................................9, 17, 23

28 U.S.C. § 157................................................................................5, 25

28 U.S.C. § 1334...............................................................................24

28 U.S.C. § 1404...............................................................................25

28 U.S.C. § 1409 ...................................................................................................................24

28 U.S.C. § 1412 ...........................................................................................................4, 23, 25

**RULES**

Fed. R. Civ. P. 12(b)(6) ..........................................................................................................13

Fed. R. Evid. 201(b)(2) ..............................................................................................................8

Defendants Abry Partners, LLC, Apex Credit Partners LLC, CIFC Asset Management LLC, Ellington Management Group, L.L.C., and Trimaran Advisors Management, L.L.C. (collectively, the "Lender Defendants") respectfully submit this Memorandum of Law in support of their motion to dismiss the Complaint or, in the alternative, to transfer this action to the United States District Court for the District of Delaware.

## PRELIMINARY STATEMENT

This action is a blatant attempt to override the judgment and jurisdiction of another federal court.  Last year, Town Sports International, LLC, and its affiliates ("Town Sports"), a nationwide chain of gyms, went through an unfortunate COVID-related bankruptcy.  Plaintiffs and the Lender Defendants were secured creditors of Town Sports, and their loans were used to fund a sale of Town Sports in the bankruptcy proceeding.  Plaintiffs disliked the outcome of the underlying bankruptcy proceedings: a court-ordered sale in which all secured creditors shared equally (and in which all were equally disappointed).  Though they raised no objection or appeal in the underlying bankruptcy proceedings, Plaintiffs now hope to squeeze fellow creditors for additional returns by claiming that Defendants' compliance with the bankruptcy court's sale order breached a contract between the secured creditors and Town Sports.

The relevant facts arise out of a prior bankruptcy action and its November 2020 final judgment on the merits.  Plaintiffs and the Lender Defendants participated in extensive proceedings before the Honorable Christopher S. Sontchi in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").  Judge Sontchi held a sale hearing and issued a sale order to allow the sale of Town Sports' assets.  He expressly approved the sale, to be funded in part by a third party, as well as with the loans held by Plaintiffs and the Lender Defendants, a remedy known as a "credit bid."  When the third-party funding for the sale fell

through, and Town Sports nevertheless sought to complete the sale, the Lender Defendants filed an emergency motion arguing to the Bankruptcy Court Plaintiffs' precise theory here: that the sale could not close because the Lender Defendants had not yet "instructed" the transfer of the credit bid, a necessary step under the contracts governing Town Sports' secured debt.  Following notice (including to Plaintiffs), briefing (served on Plaintiffs), and hearings (where Plaintiffs appeared, but said nothing)—Judge Sontchi *rejected* this theory.  To ensure this essential step to closing was taken, Judge Sontchi issued an order confirming that the credit bid had been transferred, or, if it had not, asserting his equitable powers to "deem" it contributed, and that the sale was fully authorized.  Even though this was not the result the Lender Defendants wanted or advocated, it was a final order of the Bankruptcy Court, binding on all creditors.  The sale closed.

Months later, after raising no objection in the Bankruptcy Court or attempting to seek any stay or appeal of its order, Plaintiffs now allege that the Lender Defendants "took unauthorized actions" by acceding to the court-ordered sale without sufficiently "instructing" the transfer of the credit bid.  Plaintiffs retread the same theory Judge Sontchi considered and rejected when he held the credit bid to be fully authorized.  Plaintiffs' rehashing of the authorization question—on the far-fetched theory that compliance with Judge Sontchi's decision authorizing the credit bid somehow breached a contract—suffers from numerous fatal flaws that require dismissal.

***First***, Plaintiffs' claims are barred by the doctrines of *res judicata* and collateral estoppel, which bind all creditors who participate in the proceedings and bring critical finality to court-approved bankruptcy sales.  *Sure-Snap Corp. v. State St. Bank & Tr. Co.*, 948 F.2d 869, 873, 877 (2d Cir. 1991).  The Bankruptcy Court expressly considered, and rejected, Plaintiffs' theory here: that the Lender Defendants did not sufficiently authorize a step in the bankruptcy sale process

under the governing documents.  It did so following notice, briefing, and hearings at which Plaintiffs appeared, but said nothing.  Plaintiffs were represented by counsel in the bankruptcy action, yet raised no objections during or after any of the relevant briefings, hearings, or rulings. Judge Sontchi issued **two sale orders** confirming the sale of Town Sports' assets, which orders are final judgments triggering *res judicata*.  *In re Adelphia Recovery Tr.*, 634 F.3d 678, 695 (2d Cir. 2011).  Moreover, Judge Sontchi specifically considered and rejected Plaintiffs' theory that the Lender Defendants did not authorize the transfer of the credit bid under the relevant contracts, a holding that also estops Plaintiffs' claims.  *Falbaum v. Pomerantz*, 19 F. App'x 10, 12 (2d Cir. 2001).  And Plaintiffs' re-packaging this rejected theory as a "breach of contract" does not help them because, "'once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy.'"  *Fifty CPW Tenants Corp. v. Epstein*, 16 A.D.3d 292, 293 (1st Dep't 2005) (citation omitted).  Plaintiffs' claims, if allowed to go forward, would undermine the critical finality of bankruptcy sales processes for all parties involved.

**Second**, by the terms of their agreements, Plaintiffs expressly waived their right to sue on this issue, a promise they have now breached.  Pursuant to a "No-Action" clause in the governing Security Agreement, only *the Collateral Agent*, acting upon *the instruction of a majority* of Town Sports' secured lenders, may bring an action to enforce the Security Agreement.  Non-majority lenders such as Plaintiffs waived any right to do so.  Plaintiffs have now sued without bringing together a majority of the lenders or so instructing the Collateral Agent.  Courts regularly dismiss claims brought in violation of reasonable no-action clauses that so limit enforcement actions, notwithstanding creative attempts to plead around them.  *See, e.g.*, *Victor v.*

*Riklis*, No. 91 Civ. 2897 (LJF), 1992 WL 122911, at *6 (S.D.N.Y. May 15, 1992).  Indeed, Plaintiffs are now liable for a breach of contract, having sued after promising not to.

 **Third**, Plaintiffs' breach of contract claims conflict with the governing contracts' plain text, dooming them as a matter of law.  The allegedly breached contractual provisions impose no legal duty on the Lender Defendants; rather, they spell out the affirmative powers of a different Defendant—the Collateral Agent.  Nor could there have been any breach, even by the Collateral Agent: Judge Sontchi ruled that the technical step Plaintiffs say was unauthorized—transfer of the right to credit bid—was authorized and successfully completed.  Finally, Plaintiffs cannot plausibly allege causation or damages because the court-ordered sale pursuant to the Bankruptcy Code, not any supposed breach by Defendants, decided the fate of Plaintiffs' collateral.

 **Fourth**, should any claims survive, the Court should transfer this case to the District of Delaware pursuant to 28 U.S.C. § 1412 for referral back to Judge Sontchi.  "[T]he district in which the underlying bankruptcy case is pending is presumed to be the appropriate district for hearing and determination of a proceeding in bankruptcy."  *Credit Suisse AG v. Appaloosa Inv. Ltd. P'ship I*, No. 15 Civ. 3474 (SAS), 2015 WL 5257003, at *7 (S.D.N.Y. Sept. 9, 2015) (citation omitted).  Judge Sontchi expressly and repeatedly retained jurisdiction over interpretation and enforcement of his prior orders; having devoted substantial time to this matter, he well knows the applicable facts and law; and he is best positioned to evaluate Plaintiffs' theory that complying with his order breached a contract.  *See* Salant Decl. Ex. 7 ¶ 45 ("This Court shall retain jurisdiction to . . . interpret, implement, and enforce the terms and provisions of this Sale Order and the Asset Purchase Agreement . . . and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale"); *id.* Ex. 12 at 1 ("[T]he Court has

jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334[.]").  This Court should not accept Plaintiffs' transparent end-run around the Bankruptcy Court.

No one should be sued, much less penalized, for complying with a federal court order. Plaintiffs' claims, if allowed to go forward, would undermine the finality of bankruptcy sales processes for all parties involved.  Because the Bankruptcy Court already decided this matter, the contracts at issue expressly prohibit this lawsuit, and Plaintiffs state no cognizable theory of breach of contract, Plaintiffs' Complaint should be dismissed with prejudice, and any surviving claims should be transferred.

## BACKGROUND

### A.   Plaintiffs and the Lender Defendants Were Secured Creditors of Town Sports.

Prior to its 2020 bankruptcy, non-party Town Sports owned and operated health and fitness clubs in the United States under popular brands such as New York Sports Clubs, Boston Sports Clubs, Washington Sports Clubs, and Philadelphia Sports Clubs.  Compl. ¶¶ 1, 25. Plaintiffs and the Lender Defendants were lenders to Town Sports, having provided Town Sports a secured credit facility to fund its operations.  *Id.* ¶ 26.  The terms of the secured credit facility are set forth in a Credit Agreement and a Security Agreement, each dated November 15, 2013. *Id.* ¶¶ 26–27, Ex. 1 ("Credit Agreement") & Ex. 2 ("Security Agreement").  The parties to this action are parties to the Credit Agreement and the Security Agreement.

### B.   Key Contractual Provisions: (1) "Majority Rules," (2) the Collateral Agent, and (3) the "No-Action" Clause.

The governing Credit Agreement and Security Agreement contain three key provisions.

*1. "Majority Rules."*  The Credit Agreement and the Security Agreement (as is typical for these documents) operate on a "majority rules" basis for certain important decisions by the lenders, such as how to remedy a default by Town Sports.  The holders of 50% or more of the

relevant loans are defined as the "Required Lenders" (Credit Agreement § 1.01) and the

"Required Secured Creditors" (Security Agreement art. IX).  Their majority decisions bind all

lenders:

> **[A]ny action taken by the Required Lenders** . . . **in accordance with the provisions of this [Credit] Agreement or the Security [Agreement]**, and the exercise by the Required Lenders . . . of the powers set forth herein or therein, together with such other powers as are reasonably incidental thereto, **shall be authorized and binding upon all of the Lenders**.

Credit Agreement § 12.10(a) (emphases added).  Similarly, the Security Agreement requires that

any action to enforce the Security Agreement or obtain collateral upon a default must occur

"upon the instructions of the Required Secured Creditors[.]"  Security Agreement § 7.1.  At all

relevant times, the Lender Defendants held the majority of Town Sports' secured loans and were

the "Required Lenders" (under the Credit Agreement) and the "Required Secured Creditors"

(under the Security Agreement), with the power to bind all lenders.  Compl. ¶ 5.  Plaintiffs held a

non-majority of Town Sports' loans and were never in the majority group.  *Id.* ¶ 31.

    *2. The Collateral Agent.*  The Security Agreement appoints a Collateral Agent, a

ministerial position to hold a security interest in the collateral and execute remedies in the event

of default.  *See* Security Agreement, Preamb. (appointing Collateral Agent) & § 1.1(a) (granting

Collateral Agent security interest in collateral).  The Collateral Agent has the sole power to

enforce the security agreement, taking its instructions from the required majority of lenders:

> By accepting the benefits of this [Security] Agreement . . . , the Secured Creditors expressly acknowledge and agree that **this Agreement . . . may be enforced only by the action of the Collateral Agent acting upon the instructions of the Required Secured Creditors**[.]

Security Agreement § 7.1 (emphasis added); *see also* Credit Agreement § 12.10(a).  Defendant

Wilmington Savings Fund Society, FSB (the "Agent Defendant") is presently the Collateral

Agent under the Security Agreement, and also holds a similar ministerial role of Administrative

Agent under the Credit Agreement.[1]

　　　*3. The No-Action Clause.*  Finally, a "No-Action" clause in the Security Agreement

expressly prohibits non-majority lenders, such as Plaintiffs, from pursuing remedies in the event

of default or otherwise enforcing the Security Agreement.  Plaintiffs agreed that:

> By accepting the benefits of this [Security] Agreement . . . , **the Secured Creditors**
> **expressly acknowledge and agree** that this Agreement . . . may be enforced only
> by the action of the Collateral Agent acting upon the instructions of the Required
> Secured Creditors and **that no other Secured Creditor shall have any right**
> **individually to seek to enforce or to enforce this Agreement or to realize upon**
> **the security to be granted hereby**[.]

Security Agreement § 7.1 (emphases added).

　　　Each of these three provisions is commonplace in financing agreements.  They are aimed

at promoting efficiency and consensus and are intended to avoid nuisance conduct by minority,

disgruntled creditors.

### C.　Town Sports Declares Bankruptcy in Delaware and Plaintiffs Appear in the Bankruptcy Action.

　　　Town Sports' business was devastated by the COVID-19 pandemic, which forced its

health and fitness clubs to close in March 2020.  Compl. ¶ 2.  On September 14, 2020, Town

Sports sought chapter 11 protection.  *See In re Town Sports International, LLC., et al.*, No. 20-

12168 (Bankr. D. Del.) (CSS).[2]  Plaintiffs, represented by two sophisticated law firms, filed a

Notice of Appearance in the action that same day.  *See* Bkr. Dkt. 22 (Salant Decl. Ex. 2).

---

[1]  The Agent Defendant is separately moving to dismiss the Complaint.  *See* ECF No. 41.

[2]  Citations herein to the underlying bankruptcy action docket are styled "Bkr. Dkt."  For the
Court's convenience, cited bankruptcy action docket entries are attached as exhibits to the
accompanying Declaration of David P. Salant in Support of the Lender Defendants' Motion to
Dismiss ("Salant Decl.").  Plaintiffs reference and rely on these documents throughout their
Complaint, permitting the Court to consider them on this motion.  *See Chambers v. Time
Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (on a motion to dismiss, the court may

The Lender Defendants collectively held more than 50% of the loans and, therefore, comprised the "Required Lenders" and "Required Secured Creditors" authorized to bind all the lenders and direct the Collateral Agent.  Compl. ¶¶ 4–5, 31–32.  Because there were outstanding defaults at that time, the Lender Defendants were authorized to determine what remedy to pursue on behalf of all lenders.  In contrast, Plaintiffs, who held less than 50% of the loans, had no authority over any other secured lenders or the Collateral Agent.  *See id.* ¶¶ 31–32.

### D.    The Lender Defendants Arrange a Sale Using a "Credit Bid."

With Town Sports on the brink of liquidation, the Lender Defendants arranged for a third party, Tacit Capital LLC ("Tacit"), to help fund a restructuring that would avoid liquidation.  *See* Compl. ¶¶ 6–7, 33–34.  Tacit and the Lenders would form a "NewCo" to buy Town Sports' assets.  *Id.* ¶ 33.  The NewCo would be funded with cash from Tacit and a contribution of the right to "credit bid" from the Lenders.  *Id.*  A credit bid is a remedy under a credit agreement and security agreement, and permitted under the Bankruptcy Code, allowing the holders of a secured claim to use it as currency to buy assets, in lieu of cash.  *Id.* ¶ 7.  Here, the Lender Defendants would authorize the NewCo to "credit bid" $80 million of secured loans to buy Town Sports' assets, in exchange for a minority equity stake in NewCo and newly issued subordinated debt.  *Id.* ¶ 34.  All lenders—the Lender Defendants as well as Plaintiffs—would (and did) share equitably, each taking a *pro rata* stake in the NewCo.[3]  *Id.* ¶ 46.

---

consider "any written instrument attached to [the Complaint] as an exhibit," "any statements or documents incorporated in it by reference," and any document upon which it "relies heavily upon its terms and effect" (citation omitted)).  Moreover, the Court may take judicial notice of public court records and the Lender Defendants reserve the right to seek judicial notice of such records should the Court so instruct.  *See* Fed. R. Evid. 201(b)(2); *Williams v. N.Y.C. Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020) (summary order).

[3]  Meanwhile, Plaintiffs unsuccessfully advocated a competing plan that would have largely wiped out the Lender Defendants' claims while leaving Plaintiffs substantially advantaged over the Lender Defendants.  *See* Bkr. Dkt. 47 ¶¶ 4–12, 29–34, 40 (Salant Decl. Ex. 3).

NewCo did not own the secured claims under the credit agreement and as such did not have the right to credit bid or have any right to use the credit bid as consideration to purchase the assets. Instead, the right to credit bid would have to be transferred from Town Sports' secured lenders to NewCo. Under Section 7.1 of the Security Agreement, such a transfer would have to be executed by the Collateral Agent, following an instruction from the majority of the lenders.

### E.   The Bankruptcy Court, Following a Hearing, Issues the First Sale Order; Plaintiffs Do Not Object.

Plaintiffs were expressly aware of this contemplated sale plan, including the role of Tacit and the use of a credit bid, through public court filings and hearings in which they participated. Compl. ¶¶ 6, 32–37. On October 2, 2020, Town Sports filed a sale motion (the "Sale Motion"), asking the court to approve the sale of Town Sports' assets and operations to NewCo. *See* Bkr. Dkt. 160 ¶¶ 6, 12, 17 (Salant Decl. Ex. 4). The Sale Motion included as exhibits a notice of motion, draft bid procedures, and an Asset Purchase Agreement ("APA") subject to court approval of the sale, and described in detail the role of Tacit and planned use of a credit bid. *Id.* Plaintiffs filed no objection to the Sale Motion. *See* Salant Decl. Ex. 5 (excerpt of docket sheet).

On November 3, 2020, Judge Sontchi held a hearing regarding the Sale Motion (the "Sale Motion Hearing"). Compl. ¶ 36. At the Sale Motion Hearing, Town Sports asked Judge Sontchi to enter an order approving the Sale Motion. *See* Bkr. Dkt. 651 at 8 (Salant Decl. Ex. 6) (Tr. of Sale Motion Hearing). Plaintiffs participated in the Sale Motion Hearing but raised no objections. Judge Sontchi asked if anyone wished to be heard and, hearing no responses, approved the sale order on the record. *Id.* at 8.

On November 4, 2020, Judge Sontchi issued a written order approving the sale (the "First Sale Order"). The First Sale Order stated that the Collateral Agent, on behalf of the secured lenders, "has the right under section 363(k) of the Bankruptcy Code and is authorized by this

Court pursuant to the Bid Procedures Order and this Sale Order, to credit bid the Credit Bid

Consideration."  Bkr. Dkt. 639 at 13–14 (Salant Decl. Ex. 7); *see also* Compl. ¶¶ 36–37.

Accordingly, the Agent Defendant was authorized to transfer the credit bid for use in a court-

approved sale.  Plaintiffs never challenged the First Sale Order.

**F.      When the Sale Plan Falters, the Bankruptcy Court Holds a Hearing and
         Issues the Second Sale Order; Plaintiffs Again Do Not Object.**

The parties subsequently learned that Tacit could not fund the NewCo with cash as it had

planned.  Compl. ¶ 38.  Accordingly, on November 27, 2020, the Lender Defendants filed an

emergency motion and briefing seeking to enjoin the closing of the sale (the "Emergency Sale

Motion").  Bkr. Dkt. 710 (Salant Decl. Ex. 8).  In the Emergency Sale Motion, the Lender

Defendants argued that the sale could not close because the credit bid had not yet been

contributed to the NewCo by the Collateral Agent and that no direction to that effect had been

given by the Lender Defendants.  *Id.* ¶¶ 18, 24–30.  Specifically, the Lender Defendants argued

that, under Section 7.1 of the Security Agreement (the same section cited by Plaintiffs here),

remedies such as a credit bid must be executed by the Collateral Agent "acting upon the

instructions of the Required Secured Creditors"—the majority of lenders—but this step had not

yet taken place.  *Id.*  Therefore, the Lender Defendants argued, the sale could not go forward

until the Lender Defendants gave this instruction.  *Id.*  On November 29, Town Sports filed

briefing opposing the Emergency Sale Motion, arguing that closure of the sale was necessary to

avoid liquidation, including loss of employee jobs, and that the credit bid could not be withheld

because the Bankruptcy Court had already authorized its use in the First Sale Order.  *See* Bkr.

Dkt. 714 ¶¶ 3–5 (Salant Decl. Ex. 9).  Town Sports therefore moved that "to the extent this Court

[found] that the Credit Bid Consideration ha[d] not yet been contributed to NewCo . . . the Court

[should] direct the . . . Agent to transfer prepetition debt in the amount of $80 million to NewCo

10

so that the parties may proceed with the closing of the Sale." *Id.* ¶ 22.  Plaintiffs filed no submission regarding the Emergency Sale Motion.

On November 30, 2020, Judge Sontchi held a hearing on the Emergency Sale Motion (the "Emergency Sale Motion Hearing").  *See* Bkr. Dkt. 777 (Salant Decl. Ex. 10) (Tr. of Emergency Sale Motion Hearing).  At the Emergency Sale Motion Hearing, the Lender Defendants reiterated their position that "the credit bid must first be contributed to the buyer before the buyer is able to complete the purchase," and that the First Sale Order "d[id] not provide any direction to make the credit bid." *Id.* at 10–11.  Town Sports reiterated its position that the First Sale Order fully authorized the credit bid, and that a damaging liquidation was the likely alternative to a broken sale. *Id.* at 15–18.  Judge Sontchi asked if other parties wished to be heard. *Id.* at 18 ("Does any one else wish to be heard before I turn it over for reply?").  Plaintiffs, who were in attendance and represented by sophisticated counsel, said nothing. *See* Bkr. Dkt. 720 (Salant Decl. Ex. 11) (appearance sheet listing Michael Byun of Akin Gump for Plaintiffs).

At the Emergency Sale Motion Hearing, Judge Sontchi ruled in favor of Town Sports that "the transfer of the right to credit bid[] ha[d] already occurred."  Bkr. Dkt. 777 at 27 (Salant Decl. Ex. 10).  In rejecting the Lender Defendants' position, he explained:

> [T]o allow the term lenders not to credit bid at this point in the case would be extremely detrimental to the interest of the [Town Sports], its creditors and its parties in interest.
>
> I think it's too late not to grant that authority. I think that **the sale order makes it clear that the preliminaries, i.e.[,] the transfer of the right to credit bid, have already occurred** and we're not awaiting that happening. . . .  I entered an order, we're going to closing[,] and now all of a sudden the term lenders say we never gave the authority for the buyer to credit bid, it's just too late.
>
> . . . . **I think the documents made it clear that that contribution already [occurred]—and to the extent that it didn't already occur pursuant to some sort of documents being exchanged among the parties[,] I deemed it as a matter of law and to the extent I have to exercise equitable power here it did occur.**

> **So, I am finding that the buyer has the authority to credit bid.**  You can go to closing and the buyer can credit bid the debt.

*Id.* at 25–27 (emphases added).  Judge Sontchi thus ruled that the right to credit bid had already been, or was deemed to be, contributed by the Collateral Agent to the NewCo, rejecting the argument that the sale could not close *because* the contribution had not been authorized by the majority lenders or effected by the Collateral Agent.

Judge Sontchi reiterated his ruling by a written order entered that day (the "Second Sale Order").  The Second Sale Order ordered that:

> (i) the Motion is DENIED for the reasons set forth on the record; and (ii) pursuant to paragraph X of the Sale Order, the Prepetition Agent, on behalf of the [Lender Defendants], **has transferred the right to credit bid** the Credit Bid Consideration to the Buyer [NewCo], and [NewCo] **is authorized to contribute the Credit Bid Consideration** at closing of the sale.

Bkr. Dkt. 721 at 2 (Salant Decl. Ex. 12) (emphases added).  As with the First Sale Order, Plaintiffs never challenged the Second Sale Order—either through a request for reconsideration, appeal, or a request for a stay.  The Second Sale Order was by its terms a "final order," *id.* at 1, and no one sought review of that order or otherwise appealed.  Accordingly, the sale of Town Sports' assets to the NewCo closed, and Plaintiffs and the Lender Defendants received equal *pro rata* shares of a 20% stake in the equity of NewCo.  Compl. ¶ 46.

### G.  Five Months Later, Plaintiffs Bring This Action.

In May of 2021, more than five months after close of the sale, Plaintiffs brought this action, claiming that the court-ordered sale of Town Sports' assets breached the Credit Agreement and Security Agreement.  Plaintiffs assert three causes of action.  First, Plaintiffs allege the Lender Defendants breached Section 12.10 of the Credit Agreement and Section 7.1 of the Security Agreement, on the theory that "[t]he Lender Defendants did not have the authority" to transfer or authorize the credit bid in the fashion ordered by Judge Sontchi's Second Sale

Order.  Compl. ¶¶ 47–53.  Second, Plaintiffs assert a cause of action solely against the Agent

Defendant.  *Id.* ¶¶ 54–62.  Third, Plaintiffs allege that the Lender Defendants and Agent

Defendant impermissibly amended the Credit Agreement by allowing the credit bid to go

through, as it released the lenders' collateral without each lender's consent.  *Id.* ¶¶ 63–69.  All of

Plaintiffs' claims rest on the idea that the credit bid was inappropriately transferred, resulting in

an unauthorized sale, notwithstanding Judge Sontchi's orders to the contrary.

## LEGAL STANDARD

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007)).  However, "'threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements,'" are not entitled to any presumption of truth.  *Ibela v.*

*Allied Universal*, No. 20 Civ. 3800 (ALC), 2021 WL 3077482, at *3 (S.D.N.Y. July 20, 2021)

(quoting *Iqbal*, 556 U.S. at 678).  In particular, "[s]tating in a conclusory manner that an

agreement was breached does not sustain a claim of breach of contract."  *Berman v. Sugo LLC*,

580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008).

## ARGUMENT

I. **Plaintiffs' Complaint Is Barred by the Doctrines of *Res Judicata* and Collateral Estoppel.**

A. ***Res Judicata* Bars Plaintiffs' Claims.**

Under the doctrine of *res judicata*, "a final judgment on the merits of an action precludes

the parties or their privies from relitigating issues that were or could have been raised in that

action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980).  "'[O]nce a claim is brought to a final

conclusion, all other claims arising out of the same transaction or series of transactions are

barred, even if based upon different theories or if seeking a different remedy.'"  *Fifty CPW*

*Tenants Corp.*, 16 A.D.3d at 293 (quoting *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357 (1981)).

"A bankruptcy court order confirming an asset sale is a final judgment capable of having *res judicata* effect." *In re Adelphia Recovery Tr.*, 634 F.3d at 695 (citing *In re Am. Preferred Prescription, Inc.*, 255 F.3d 87, 92 (2d Cir. 2001) (citation omitted)). The *res judicata* effect of a bankruptcy proceeding applies to all creditors, whether or not they filed briefs, spoke at hearings, or otherwise raised any objection. *See Sure-Snap Corp.*, 948 F.2d at 873, 877 (explaining that "a confirmation plan . . . bind[s] its debtors and creditors as to all the plan's provisions, and all related, property or non-property based claims which could have been litigated in the same cause of action"); *Penberthy v. Chickering*, No. 15 Civ. 7613 (PAE), 2017 WL 176312, at *5 (S.D.N.Y. Jan. 13, 2017) ("The provisions of a confirmed Chapter 11 reorganization plan bind each and every creditor, regardless of whether the plan impairs the creditor's claim, and regardless of whether the creditor accepted the plan." (quoting *In re Bel Air Square Joint Venture*, 100 F.3d 942 (2d Cir. 1996))).

Courts routinely apply *res judicata* to bar lawsuits in which a party attempts to challenge a bankruptcy sale after the fact by raising arguments they could have raised in the sale proceeding but did not. For example, in *In re Aiolova*, the court dismissed with prejudice the action of a creditor who had failed to argue in a bankruptcy proceeding that he had a certain interest in the property, and similarly failed to challenge the sale authorization order, instead suing in a separate complaint "[m]ore than five months after entry of the Sale Authorization Order" and after his offer to buy the property was rejected. 496 B.R. 123, 126–28 (Bankr. S.D.N.Y. 2013). The court reasoned that the plaintiff's complaint raised "arguments and claims that [he] should have raised in connection with the Sale Authorization Order," and therefore

rejected his "attempt . . . to end-run the Sale Authorization Order." *Id.* at 132. *See also, e.g.*, *In re Clinton St. Food Corp.*, 254 B.R. 523, 532 (Bankr. S.D.N.Y. 2000) (rejecting trustee's complaint alleging fraud in a bankruptcy sale on the grounds that "[a]ll of the wrongful conduct alleged in the amended complaint occurred prior to the entry of the Sale Order which itself is an essential element of every claim" and that *res judicata* therefore barred complaint); *In re Old CarCo LLC*, No. 09 Civ. 8875 (CM), 2010 WL 9461648, at *4 (S.D.N.Y. July 2, 2010), *aff'd sub nom. In re Old CarCo LLC*, 438 F. App'x 30 (2d Cir. 2011) (noting in a ruling on an appeal of a rejection order that the appellants did not "challenge[] the res judicata effect of the Bankruptcy Court's Sale and Rejection Orders" and agreeing that "both are final orders for which appellate remedies have been exhausted and neither of which the dealers appealed").

Here, *res judicata* attached to Judge Sontchi's First Sale Order and Second Sale Order. Plaintiffs appeared at these proceedings represented by counsel (albeit not the same counsel representing them here). They had every opportunity to object as part of these proceedings, but did not. They could have taken an appeal, but did not. Plaintiffs have therefore missed the many opportunities they had to challenge the finalized sale, including whether it was fully authorized under the governing Credit and Security Agreements. If permitted to proceed, this lawsuit, lodged nearly six months later in a different forum, would undermine the bedrock principle of finality attaching to completed bankruptcy sales. As the Second Circuit has explained: "To allow [Plaintiffs to] challenge the decision made at the time of the asset sale would necessarily call into question the validity of the price paid at that time and confirmed by the court, which is exactly what *res judicata* prohibits." *In re Adelphia Recovery Tr.*, 634 F.3d at 695.

### B.     Collateral Estoppel Bars Plaintiffs' Claims.

Plaintiffs are additionally precluded because the Bankruptcy Court already ruled on the specific issue of the transfer of the credit bid. Collateral estoppel, or issue preclusion, "bars

litigation of an issue where '(1) the identical issue was raised in a previous proceeding; (2) the

issue was actually litigated and decided in the previous proceeding; (3) the party had a full and

fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a

valid and final judgment on the merits.'" *In re Soundview Elite Ltd.*, No. 14 Civ. 7045 (JPO),

2014 WL 7009070, at *2 (S.D.N.Y. Dec. 12, 2014) (quoting *Proctor v. LeClaire*, 715 F.3d 402,

414 (2d Cir. 2013)).  A specific finding in a bankruptcy proceeding following a hearing triggers

collateral estoppel, including determinations made in connection with a fast-paced asset sale.

*See Falbaum*, 19 F. App'x at 12; *In re Waypoint Leasing Holdings Ltd.*, 607 B.R. 143, 160

(Bankr. S.D.N.Y. 2019) ("[S]ales in bankruptcy often happen on an expedited basis, but

expedition does not deprive a sale order of its collateral estoppel effect."); *In re Temtechco, Inc.*,

No. 95-00596, 1998 WL 887256, at *16 (Bankr. D. Del. Dec. 18, 1998) ("As is evident in the

record . . . the allegations of fraud were identical to the objections that were made at the . . . sale

hearing. . . .  Thus, the allegation falls short of the requirements of Rule 60(b) and falls within the

doctrine of collateral estoppel." (citations omitted)).

     Here, the question of whether the Collateral Agent was authorized to contribute the

secured claims and related right to credit bid was the central question litigated in the Emergency

Sale Motion briefing and subsequent hearing.  *See* Salant Decl. Ex. 8 ¶¶ 18, 24–30; *id.* Ex. 9 ¶¶

3–5, 22; *id.* Ex. 10 at 10–11, 15–18.  Judge Sontchi then expressly decided the issue: He deemed

the right to credit bid to have been transferred, and found that transfer to have been permitted

under the governing documents and entered court order, and therefore authorized the sale.  *See*

*id.* Ex. 9 at 25–27.  Judge Sontchi reiterated his conclusions in the Second Sale Order.  *See id.*

Ex. 11 at 2.

Plaintiffs had full and fair opportunities to object to the use of the credit bid at the Sale Motion Hearing and the Emergency Sale Hearing, but said nothing.  *See* Compl. ¶¶ 36–45; *see also* Salant Decl. Ex. 6 at 8 ("Does anyone wish to be heard? (No verbal response)[.]"); *id.* Ex. 10 at 18 ("Does anyone else wish to be heard before I turn it over for reply? (No verbal response)[.]"); *id.* at 27 (the "court had a sale hearing, nobody objected, nobody raised this issue").  Plaintiffs' claim that the credit bid had not been appropriately transferred under the governing documents would require this Court to reach a contrary finding on an identical issue already litigated in the bankruptcy action and necessary to Judge Sontchi's orders approving the sale.  They are estopped from rehashing that same matter here.  *See, e.g.*, *Waypoint*, 607 B.R. at 160 ("[Plaintiff] was a party to the February 12 sale hearing and had a full and fair opportunity to litigate its [allegations of] collusion[, which the Court rejected] . . . .  [Plaintiff] never appealed from the *Lombard Sale Order* which is final.  [Plaintiff's Amended Complaint] raises the same collusion issues that were rejected by the Court and memorialized in the *Lombard Sale Order*, and as such, [those claims are] barred by collateral estoppel.").

Plaintiffs' third cause of action, claiming that the Lender Defendants breached Section 13.12(a) of the Credit Agreement because they released the lenders' collateral without consent through the credit bid, was similarly resolved by Judge Sontchi's prior orders.  Judge Sontchi ruled that the Collateral Agent, on behalf of the Required Lenders, had "the right under section 363(k) of the Bankruptcy Code and [was] authorized by this Court pursuant to the Bid Procedures Order and this Sale Order, to credit bid[.]"  Salant Decl. Ex. 7 ¶ X.  Plaintiffs' claim that Defendants violated the Credit Agreement by releasing collateral without consent, instead of making a credit bid authorized by the Bankruptcy Court's orders and section 363 of the Bankruptcy Code, would require the Court to reach a contrary finding on an identical issue that

was already litigated in the Bankruptcy Proceeding and was necessary for Judge Sontchi's orders approving the sale to have effect.  Plaintiffs' claims are thus precluded and should be dismissed.

## II.     Plaintiffs' Claims Are Barred by the No-Action Clause in the Security Agreement.

Plaintiffs' breach of contract claims must also be dismissed because the contract they purport to enforce prohibits them.  In the Security Agreement, Plaintiffs "expressly acknowledge[d] and agree[d]" that, other than the Collateral Agent acting upon the instructions of the majority of lenders, "***no other Secured Creditor shall have the right individually to seek to enforce or to enforce this agreement***[.]"  Security Agreement § 7.1 (emphasis added).

"[N]o-action clauses frequently are included in [contracts] to limit suits arising from those agreements."  *McMahan & Co. v. Wherehouse Ent., Inc.*, 65 F.3d 1044, 1050 (2d Cir. 1995).  "'These clauses are strictly construed' . . . and have been enforced in a variety of contexts in both federal and state courts."  *Id.* (citation omitted).  The "primary purpose" of a no-action clause is "to make it difficult for individual bondholders to bring suits that are unpopular with their fellow bondholders."  *Feldbaum v. McCrory Corp.*, No. CIV. A. 11866, 1992 WL 119095, at *3–8 (Del. Ch. June 2, 1992) (finding no-action clause applied to bar claims, including some arising under New York law).  Moreover, when "the lenders expressly agree to delegate to an agent the exclusive right to bring legal action to enforce the lenders' rights, courts will hold the parties to their bargain."  *Eaton Vance Management v. Wilmington Sav. Fund Soc., FSB*, 2018 WL 1947405, at *6 (Sup. Ct. N.Y. Cnty. 2018).  Lawsuits brought in violation of no-action clauses are regularly dismissed.  *See, e.g.*, *McMahan & Co. v. Wherehouse Ent., Inc.*, 859 F. Supp. 743, 749 (S.D.N.Y. 1994), *aff'd in relevant part and rev'd in part on other grounds*, 65 F.3d 1044 (2d Cir. 1995); *Victor*, 1992 WL 122911, at *6; *cf. Audax Credit Opportunities Offshore Ltd. v. TMK Hawk Parent, Corp.*, No. 565123/2020, Dkt. No. 171, 72 Misc. 3d

1218(A) (Sup. Ct. N.Y. Cnty. 2021) (rejecting no-action clause placing onerous and bad faith restrictions on the collateral agent pursuing claims).

Plaintiffs' lawsuit to enforce the Security Agreement violates all three conditions of the No-Action clause.  First, only the Collateral Agent, and neither Plaintiffs nor the Lender Defendants acting alone, may sue to enforce the Security Agreement.  Second, the Collateral Agent may act only "upon the instructions of the Required Secured Creditors"—the lenders holding the majority of the loans—which Plaintiffs acknowledge they are not.  Compl. ¶ 31. Third, Plaintiffs waived their "right individually to seek to enforce or enforce" the Security Agreement.  *Id.* ¶ 29.  In analogous contexts, courts have not hesitated to dismiss actions brought in violation of no-action clauses.  *See, e.g.*, *McMahan & Co.*, 859 F. Supp. at 749  ("The No Action Clause is broad and applies to 'any remedy with respect to [the] Indenture or the Securities.'  Plaintiffs did not comply with the No Action clause, and thus are precluded from suing [d]efendants on the state-law claims." (citation omitted)); *Victor*, 1992 WL 122911, at *6 ("Until Victor can demonstrate compliance with the no-action provision of the E–II indentures, he is precluded from pursuing his RICO and fraudulent conveyance claims.").

Plaintiffs do not plead any exception to the No-Action clause because none exists.  The No-Action clause does not contain any exceptions which, if satisfied, would permit Plaintiffs to sue.  *Cf. Matter of Trusts Established under the Pooling & Serv'g. Agreements relating to the Wachovia Bank Com. Mortg. Tr. Com. Mortg. Pass-Through Certs.*, 375 F. Supp. 3d 441, 448–49 (S.D.N.Y. 2019) (holding plaintiff could sue notwithstanding no-action clause because it satisfied each of three specific conditions set forth in the clause).  The clause here is notably broad—barring "any right individually to seek to enforce or to enforce" the Security Agreement—evincing a strong intent to prevent nuisance suits by disgruntled individual

19

creditors.  And there is no plausible reading by which this breach action—alleging breaches of the Security Agreement—falls outside the scope of the No-Action clause, which squarely bars efforts to "enforce" the Security Agreement.  *Cf. Quadrant Structured Prod. Co. v. Vertin*, 23 N.Y.3d 549, 552, 563–64, 16 N.E.3d 1165 (2014) (finding no-action clause did not bar suit because it precluded "contractual claims arising under the indenture," but not unrelated suits "not arising from the indenture agreement").[4]  For these reasons, Plaintiffs' claims are barred by the Security Agreement's No-Action clause and subject to dismissal with prejudice.

## III.   Plaintiffs Fail to State Cognizable Theories of Duty, Breach, Causation, or Damages.

Plaintiffs' Complaint must be dismissed for the independent reason that it fails to state a cognizable cause of action.  "On a motion to dismiss, the Court may dismiss a breach of contract claim for failure to state a claim if the 'plain language' of the contract contradicts or fails to support the plaintiff's allegations of breach."  *Perks v. TD Bank, N.A.*, 444 F. Supp. 3d 635, 639 (S.D.N.Y. 2020).  Plaintiffs must allege the contractual provisions upon which the claim is based and clearly explain the acts or omissions constituting the breach.  *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 468 (S.D.N.Y. 2014).  However, the Complaint strategically ignores contractual text contradicting Plaintiffs' conclusory allegation that the Lender Defendants' breached a duty or caused damages.

*First*, Plaintiffs do not and cannot allege that the Lender Defendants were subject to any actionable duty, because they were not.  The contractual provisions Plaintiffs rely on to plead a

---

[4] Plaintiffs are also barred from bringing these claims because they are *fellow creditors* alongside the Lender Defendants.  Plaintiffs' attempt to plead claims against *their fellow creditors*, the Lender Defendants, falls far afield of any limited exception recognized by courts.  *See Cruden v. Bank of N.Y.*, 957 F.2d 961 (2d Cir. 1992) (permitting suit but not against fellow debenture holders); *Metro. W. Asset Mgmt., LLC v. Magnus Funding, Ltd.*, 2004 WL 1444868 (S.D.N.Y. June 25, 2004) (permitting suit but not against fellow noteholders); *Howe v. Bank of N.Y. Mellon*, 783 F. Supp. 2d 466 (S.D.N.Y. 2011) (same).

breach merely spell out the affirmative powers of the Agent Defendant, and not any obligation of the Lender Defendants.  Section 12.02(a) of the Credit Agreement discusses the duties of the *Administrative Agent* (the Agent Defendant), and does not even mention the Required Lenders (the Lender Defendants).  Section 12.10 of the Credit Agreement also provides for Plaintiffs' consent to the "majority rules" approach: authorizing the Collateral Agent (at the direction of the Lender Defendants) to bind all secured lenders, including Plaintiffs.  Finally, Section 7.1 of the Security Agreement enumerates powers of the *Collateral Agent* to execute remedies at the direction of the majority lenders (the Lender Defendants), and does not suggest, much less state, any fiduciary or other obligation of those lenders.  In fact, none of these provisions requires the Lender Defendants to do, or refrain from doing, anything.  "In the absence of duty, there is no breach and without a breach there is no liability."  *Fernandez v. New England Motor Freight, Inc.*, No. 12 Civ. 6536 (VEC), 2015 WL 4002233, at *2 (S.D.N.Y. July 1, 2015) (quoting *Pulka v. Edelman*, 40 N.Y.2d 781, 782 (1976)).

    ***Second***, even assuming the Lender Defendants were subject to a duty—which they are not—Plaintiffs plead no specific acts or omissions constituting a breach.  For the reasons stated at the Emergency Sale Hearing and in his Second Sale Order, Judge Sontchi held that the credit bid had been successfully transferred under the governing documents, and that the sale of Town Sports' assets using the credit bid was fully authorized.  *See* Salant Decl. Ex. 10 at 27 ("I think the documents made it clear that that contribution already [occurred.]").  The Lender Defendants acceded to Judge Sontchi's ruling, and Plaintiffs do not plead what the Lender Defendants could or should have done differently to vindicate the Security Agreement.  (Likewise, Plaintiffs raised no objection at the time of Judge Sontchi's ruling nor did they appeal his ruling.)  Therefore, there was no act or omission by the Lender Defendants that could have been a breach.

21

To the extent Plaintiffs' pleading suggests the Lender Defendants should have formally communicated a written instruction to the Agent Defendant to contribute the credit bid, Judge Sontchi considered and rejected this possibility.  *See* Salant Decl. Ex. 10 at 27 ("[T]o the extent [the contribution of the credit bid] didn't already occur pursuant to some sort of documents being exchanged among the parties[,] I deemed it as a matter of law and to the extent I have to exercise equitable power here it did occur[.]").  Plaintiffs plead no contractual text specifying the manner of authorization; nor do they plead that authorization by court order is inadequate.  Plaintiffs acknowledge that the Lender Defendants were the Required Lenders—the majority group— capable of making decisions binding them and the other lenders to remedy an event of default. *See* Compl. ¶¶ 31–32.  The Lender Defendants possessed not only the literal power to instruct the Collateral Agent with regard to remedies, Security Agreement § 7.1, but also all powers "reasonably incidental" to the exercise of their powers enumerated in the Credit Agreement and Security Agreement, Credit Agreement § 12.10(a).  Plaintiffs' contradictory and conclusory assertion that "[t]he Lender Defendants did not have the authority to transfer and/or credit bid," Compl. ¶ 52, runs headlong into this clear contractual text.  In sum, the plain language of the contracts "fail[ ] to support the plaintiff's allegations of breach," which contradictory allegations should not be credited by the Court.  *Perks*, 444 F. Supp. 3d at 639.

***Third***, Plaintiffs fail to allege causation or damages.  As noted, Plaintiffs accept that the Lender Defendants were empowered to authorize the credit bid, with or without Plaintiffs' consent.  While Plaintiffs' decision to file their Complaint suggests their dissatisfaction with the economics of the sale, they plead no act or omission by the Lender Defendants that would have resulted in a better outcome or even a different outcome.

**Fourth**, Plaintiffs are wrong that the transfer of the credit bid and closure of the sale "effectively amended the Credit Agreement to release" all lenders' collateral without the needed unanimous consent for amendment.  Compl. ¶¶ 67–68.  Plaintiffs mischaracterize a "remedy" permitted under the contracts as an "amendment" to that contract.  The credit bid and release of liens in a bankruptcy asset sale is permitted: (1) as a remedy under the Credit and Security Agreements (*see* Security Agreement § 7.1); (2) explicitly under the Bankruptcy Court's orders (*see* Salant Decl. Exs. 7 & 12); and (3) by Bankruptcy Code Section 363, which allows credit bids (11 U.S.C. § 363(k)) and court-ordered sales "free and clear" of liens (11 U.S.C. § 363(f)).  Courts have held this to be true whether or not non-majority creditors liked the resulting deal.  *See In re Chrysler LLC*, 405 B.R. 84, 102–03 (Bankr. S.D.N.Y. 2009) (rejecting non-majority lender's theory that sale of collateral effected an "amendment" when "the loan documents authorized the [collateral agent] to consent to the sale without the need to amend or modify the loan documents").  Here, all lenders—Plaintiffs included—shared ratably in the sale recovery (an ownership stake in NewCo).  Plaintiffs' treatment of a free and clear bankruptcy asset sale as an effective amendment to the Credit Agreement would give every creditor the right to stop all bankruptcy sales, nullifying the "majority rules" and "no-action" aspects of such agreements.  The Court should reject this nonsensical reading and dismiss Plaintiffs' third cause of action for failure to plead any conduct in breach of the applicable contracts.

## IV.   Any Surviving Claims Should Be Transferred to the Delaware Bankruptcy Court.

Should Plaintiffs' claims be allowed to advance, the action should be transferred to the District of Delaware for referral to the Delaware Bankruptcy Court for reasons of judicial efficiency, comity, and common sense.  "A district court may transfer a case or proceeding under title 11 [the Bankruptcy Code] to a district court for another district, in the interest of justice or for the convenience of the parties."  28 U.S.C. § 1412.  Transfer under 28 U.S.C. § 1412 requires

courts to "first consider 'whether the action could have been brought in the transferee district,' and, if so, 'whether transfer would be an appropriate exercise of the Court's discretion.'" *Deutsche Oel & Gas S.A. v. Energy Cap. Partners Mezzanine Opportunities Fund A, LP*, No. 19 Civ. 1058 (RA), 2020 WL 5814233, at *13 (S.D.N.Y. Sept. 30, 2020) (citation omitted).

This case could have and should have been brought in the District of Delaware where the court has federal subject matter jurisdiction to hear the case under 28 U.S.C. § 1334, *see* Compl. ¶ 21, and the Delaware Bankruptcy Court has jurisdiction because it is where Town Sports' bankruptcy was instituted, s*ee Deutsche Oel & Gas*, 2020 WL 5814233, at *13; 28 U.S.C. § 1409(a) ("[A] proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending.").

Once the availability of the transferee district is established, district courts in the Second Circuit weigh numerous factors, including: "(1) the plaintiff's choice of forum; (2) the locus of operative facts; (3) convenience factors, such as the location of parties, witnesses, and evidence; (4) familiarity of the court with the applicable law; and (5) interests of justice, including trial efficiency." *Deutsche Oel & Gas*, 2020 WL 5814233, at *13 (quoting *Credit Suisse AG*, 2015 WL 5257003, at *7) .  These non-dispositive factors are some of the "commonly consider[ed] factors" courts look to when exercising their significant discretion.  *CCM Pathfinder Pompano Bay, LLC v. Compass Fin. Partners LLC*, 396 B.R. 602, 608 (S.D.N.Y. 2008).

Delaware Bankruptcy Court—where the underlying case is pending—should be "presumed" the appropriate forum; Plaintiffs' effort to avoid Delaware should be given no deference.  *Credit Suisse AG*, 2015 WL 5257003, at *7 ("[T]he Second Circuit has recognized that 'the district in which the underlying bankruptcy case is pending is presumed to be the appropriate district for hearing and determination of a proceeding in bankruptcy[.]'" (quoting *In*

*re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1391 (2d Cir. 1990))).  Plaintiffs' choice of

forum is a transparent attempt to avoid the court most familiar with the key facts and procedural

history of their claims.  Judge Sontchi is "best positioned to analyze its own [orders] which . . .

are implicated in both the substance of [Plaintiffs'] claims and [Defendants'] potential

defenses[.]"  *Deutsche Oel & Gas*, 2020 WL 5814233, at *14.  Having presided over the *still-

pending* bankruptcy case, held hearings related specifically to the credit bid and agreements at

issue, and made substantial rulings (*e.g.*, the First and the Second Sale Orders), Judge Sontchi is

no doubt the appropriate jurist.  In fact, Judge Sontchi explicitly retained jurisdiction to resolve

matters arising out of the Sale Orders.[5]  And Plaintiffs even acknowledge that the credit bid was

"authorized by the Bankruptcy Court's order."  Compl. ¶ 46.  Although the forum clause in the

Credit Agreement specifies New York, *id.* ¶¶ 22–24, *but for* the Sale Orders entered by Judge

Sontchi, Plaintiffs would have no claim.  Therefore, any surviving claims should be transferred.[6]

## CONCLUSION

For the foregoing reasons, the Lender Defendants respectfully request dismissal of the

Complaint with prejudice or, in the alternative, transfer the action to the United States Court for

the District of Delaware (for further action), and any such other and further relief as is proper.

---

[5]  *See* Salant Decl. Ex. 7 ¶ 45 (First Sale Order) ("This Court shall retain jurisdiction to . . . interpret, implement, and enforce the terms and provisions of this Sale Order and the Asset Purchase Agreement . . . and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale"); *id.* Ex. 12 at 1 (Second Sale Order) ("the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334[.]").

[6]  Section 1412, and not the general venue transfer statute, 28 U.S.C. § 1404(a), applies here because the issues raised are "core" to the bankruptcy proceeding.  *See Deutsche Oel & Gas*, 2020 WL 5814233, at *7–10, 13–15.  In any event, transfer under Section 1404(a) involves consideration of similar factors, *see Gottlieb v. SEC*, 723 F. App'x 17, 19 (2d Cir. 2018), and therefore transfer of this action to the District of Delaware is appropriate under either statute.

Dated: New York, New York
   August 30, 2021

        Respectfully submitted,

        GIBSON, DUNN & CRUTCHER LLP

        By: _/s/ Mary Beth Maloney_

         Mary Beth Maloney
         David P. Salant

        200 Park Avenue
        New York, NY 10166-0193
        Telephone: 212.351.4000
        Email: mmaloney@gibsondunn.com
           dsalant@gibsondunn.com

        *Attorneys for the Lender Defendants*