**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------

|  |  |
|---|---|
| KENNEDY LEWIS PARTNERS MASTER FUND LP AND KENNEDY LEWIS PARTNERS MASTER FUND II LP, | : Case No.: 21-cv-4690 (ALC) |
|  | : |
|  | : **ORAL ARGUMENT** |
| Plaintiffs, | : **REQUESTED** |
| v. | : |
|  | : |
|  | : |
| ABRY PARTNERS, LLC, APEX CREDIT PARTNERS, LLC, CIFC ASSET MANAGEMENT LLC, ELLINGTON MANAGEMENT GROUP, L.L.C., TRIMARAN ADVISORS MANAGEMENT, L.L.C., AND WILMINGTON SAVINGS FUND SOCIETY, FSB, | : |
|  | : |
|  | : |
|  | : |
|  | : |
|  | : |
| Defendants. | : |
|  | : |

------------------------------------------------------

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO**
**WILMINGTON SAVINGS FUND SOCIETY, FSB'S MOTION**
<u>**TO DISMISS THE COMPLAINT OR TRANSFER VENUE**</u>

MCKOOL SMITH, P.C.
Kyle A. Lonergan
James H. Smith
One Manhattan West, 50th Floor
395 9th Avenue
New York, NY 10001
Telephone: (212) 402-9400

John Sparacino (to apply for admission *pro hac vice*)
600 Travis St # 7000
Houston, TX 77002
Telephone: (713) 485-7300

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS .................................................................................................... 3

    I.    The Loan and Agreements ............................................................................ 3

    II.    The Bankruptcy and Sale of Town Sports ................................................ 5

    III.    The Emergency Motion and Bankruptcy Court's Ruling ......................... 7

LEGAL STANDARD ........................................................................................................... 10

ARGUMENT ........................................................................................................................ 10

    I.    Section 12.04 of the Credit Agreement is Inapplicable ............................ 10

    II.    WSFS had an Obligation to Act Under the Agreements ........................... 12

        a.    The Agreements Impose Duties on WSFS ....................................... 12

        b.    Lender Defendants Were Not "Authorized" to Credit Bid the Loan .......................... 13

        c.    Regardless of Whether an Instruction Was Given, WSFS Breached the Agreements. ...................................... 14

    III.    The Complaint Adequately Pleads Gross Negligence ................................ 15

    IV.    The Bankruptcy Court's Approval of the Sale is Irrelevant ...................... 18

    V.    WSFS Request for a Transfer Should be Denied ........................................ 21

CONCLUSION ..................................................................................................................... 21

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................10

*Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*,
   No. 03 Civ. 1537 (MBM), 2003 WL 23018888 (S.D.N.Y. Dec. 22, 2003) ...........................16

*In re Chrysler LLC*,
   405 B.R. 84 (S.D.N.Y. 2009)............................................................................20, 21

*Clark St. Wine & Spirits v. Emporos Sys. Corp.*,
   754 F. Supp. 2d 474 (E.D.N.Y. 2010) .................................................................17

*Columbia Pictures Indus. v. Liberty Cable, Inc.*,
   919 F. Supp. 685 (S.D.N.Y. 1996).......................................................................16

*Credit Agricole Corp. v. BDC Fin., LLC*,
   2017 NY Slip Op. 30134(U) (Sup. Ct. N.Y. Cnty. 2017) ...................................19, 20

*Galper v. JP Morgan Chase Bank, N.A.*,
   802 F.3d 437 (2d Cir. 2015)................................................................................10

*In re GWLS Holdings, Inc.*,
   No. 08-12430 (PJW), 2009 Bankr. LEXIS 378 (Bankr. D. Del. Feb. 23, 2009)...............20, 21

*Homeward Residential, Inc. v. Sand Canyon Corp.*,
   298 F.R.D. 116 (S.D.N.Y. 2014) ........................................................................18

*House of Eur. Funding I, Ltd. v. Wells Fargo Bank, N.A.*,
   No. 13 Civ. 519 (RJS), 2014 U.S. Dist. LEXIS 49894 (S.D.N.Y. Mar. 31,
   2014) ......................................................................................................17

*Kalisch-Jarcho, Inc. v. City of New York*,
   58 N.Y.2d 377 (1983) ......................................................................................12

*MBIA Ins. Corp. v. Cooperatieve Centrale Raiffeisen-Boerenleenbank B.A.*,
   No. 09 Civ. 10093(RJS), 2011 WL 1197634 (S.D.N.Y., Mar. 25, 2011) ................................17

*In re Metaldyne Corp.*,
   409 B.R. 671 (Bankr. S.D.N.Y. 2009)..................................................................20, 21

ii

*Mex. Infrastructure Fin., LLC v. Corp. of Hamilton*,
 No. 17-CV-6424 (VSB), 2019 U.S. Dist. LEXIS 41742 (S.D.N.Y. Mar. 14,
 2019) ...................................................................................................................12

*In re Refco Sec. Litig.*,
 890 F. Supp. 2d 332 (S.D.N.Y. 2012) (Rakoff, J.) ..................................................18

*Robin Bay Assocs., LLC v. Merrill Lynch & Co.*,
 No. 07 Civ. 376 (JMB), 2008 WL 2275902 (S.D.N.Y. June 3, 2008) ....................17

*Sommer v. Fed. Signal Corp.*,
 79 N.Y.2d 540 (1992) .........................................................................................12, 16

*Tevdorachvili v. The Chase Manhattan Bank*,
 103 F. Supp. 2d 632 (E.D.N.Y. 2000) .....................................................................16

*Tillage Commodities Fund, L.P. v. SS&C Techs., Inc.*,
 2016 NY Slip Op. 32586(U) (Sup. Ct. N.Y. Cnty. 2016)........................................18

**Statutes**

Bankruptcy Code § 363(f) ...............................................................................................19

Bankruptcy Code § 363(k)...............................................................................................19

Federal Rule of Civil Procedure 8(a) ..............................................................................21

iii

Kennedy Lewis Partners Master Fund LP and Kennedy Lewis Partners Master Fund II LP ("Plaintiffs"), submit this memorandum of law in opposition to Wilmington Savings Fund Society, FSB's ("WSFS" or the "Agent") motion to dismiss the complaint or transfer venue (Dkt. 51, the "Motion").

## PRELIMINARY STATEMENT

Plaintiffs, Lender Defendants,[1] and others (collectively, "Syndicate Lenders") are lenders of a secured loan (the "Loan") to Town Sports International LLC ("Town Sports") pursuant to the Credit Agreement and Security Agreement ("Agreements"), under which WSFS was the Administrative and Collateral Agent. Pursuant to the Agreements, WSFS had the exclusive ability to realize upon the collateral, *i.e.*, credit bid the Loan, upon instruction from the Lender Defendants. Notwithstanding this exclusive authority, after Town Sports filed for bankruptcy, the Lender Defendants unilaterally—and without instructing WSFS—orchestrated a transaction in which caused the transfer of a "credit bid" of $80 million of the Loan without obtaining binding commitments to receive the value that had been promised in exchange for the Loan. As a result, the Lender Defendants traded away $80 million and the collateral backing the remaining $87 million of the Loan in exchange for virtually nothing. Lender Defendants engaged in this conduct in full view of WSFS, who despite having the exclusive authority to credit bid the loan, stood by and did nothing. WSFS's abdication of its duties under the Agreements is a breach of those Agreements.

WSFS's primary rejoinder is that its conduct did not breach any express provision in the Agreements, and that it was not obligated to undertake any activity without instruction from the

---

[1] The "Lender Defendants" refers to Abry Partners, LLC, Apex Credit Partners, LLC, CIFC Asset Management LLC, for and on behalf of funds and accounts managed and/or advised by it, Ellington Management Group, L.L.C., on behalf of certain funds and accounts, and Trimaran Advisors Management, L.L.C., as investment manager.

Lender Defendants.  In other words, WSFS argues that the Agreements permit it to abdicate its exclusive authority to undertake credit bids and do nothing while another party performs such acts that are solely assigned to WSFS.  This is wrong.  Notwithstanding the pleading standard on a motion to dismiss, the relevant facts are not in dispute: WSFS concedes that (i) the Lender Defendants <u>never directed</u> it to credit bid the Loan; and (ii) notwithstanding this lack of direction, the loan was credit bid in full view of WSFS, but without any involvement of WSFS.  As a result, WSFS's conduct violated multiple sections in the Agreements, including Section 12.02 of the Credit Agreement (which prohibits WSFS from performing its duties, <u>or failing to perform those duties</u>, in a grossly negligent fashion), Section 7.1 of Security Agreement (which provides WSFS with the exclusive authority to credit bid), and Section 13.12(a) of the Credit Agreement (which prohibits release of all or substantially all of the collateral (unless expressly provided for under the Agreements) without the consent of each lender).  The Complaint specifically pleads each of these violations.

The remainder of the Motion largely rests on two false premises: (i) Lender Defendants allegedly had "authority" to credit bid the loan themselves because of their authority to instruct WSFS to do so; and (ii) this "authority" was recognized by the Bankruptcy Court when it allegedly determined that Lender Defendants gave an instruction to WSFS as a matter of law.  First, Lender Defendants' authority to <u>provide an instruction to WSFS</u> to credit bid the Loan is not equivalent to the authority to <u>credit bid the Loan themselves</u>.  This difference is important.  Because WSFS is solely responsible for credit bidding the Loan, the Credit Agreement subjects it to liability if it does so in a grossly negligent fashion.  This ensures that the lenders will have recourse in the event that, like here, the Loan collateral is effectively given away for nothing.  This protection cannot be sidestepped by Lender Defendants not involving WSFS in the credit bid process, and then claiming

that the language requiring the involvement of WSFS does not mean what it says.

Second, WSFS is wrong that the Bankruptcy Court found that Lender Defendants instructed WSFS to credit bid the Loan. This is apparent from the plain language of the Bankruptcy Court's orders and hearing transcript: the court determined only that, as a matter of fact or equity, the credit bid "ha[s] occurred." Judge Sontchi did not address whether Lender Defendants gave an instruction to WSFS to credit bid the Loan—his order is silent on the matter. WSFS cannot rewrite the Bankruptcy Court's order to suit its purposes.

Lastly, WSFS cannot escape liability by asserting that it was the party that transferred the credit bid of the Loan as a result of Judge Sontchi's "deeming" the credit bid by the Agent to have occurred as a matter of equity. Given that WSFS was deemed to have credit bid the Loan, and that all parties agree there was no direction from Lender Defendants to do so, WSFS is in violation of the aforementioned sections of the Credit Agreement.

## STATEMENT OF FACTS

### I.    The Loan and Agreements

This dispute arises from the disposition of $80 million of a secured Loan (and the collateral backing the remaining $87 million of the Loan) made by the Syndicate Lenders to Town Sports in 2013. (Complaint, Dkt. 1 at ¶ 26.) The Loan was governed by the Agreements. (*Id.* at ¶ 4.) Specifically, the Agreements provide certain limited rights to the Lender Defendants and the Agent (at the direction of Lender Defendants) to take certain actions that would be binding on the Syndicate Lenders. (*Id.*)

Specifically, Section 12.10(a) of the Credit Agreement provides:

Each Lender hereby agrees … except as otherwise set forth herein, any action taken by the Required Lenders … or the Collateral Agent (at the direction of the Required Lenders …) **in accordance with the provisions of this Agreement or the Security Documents**, and the exercise by the Required Lenders … or the Collateral

3

Agent (at the direction of the Required Lenders ...) **of the powers set forth herein or therein, together with such other powers as are reasonably incidental thereto**, **shall be authorized** and binding upon all of the Lenders.

(Credit Agreement, Dkt. 1-1 at §12.10(a) (emphasis added).)  Pursuant to this provision, the Agent is only "authorized" to engage in conduct (at the direction of the Lender Defendants) that is "in accordance with the provisions of" the Agreements.

Section 7.1 of the Security Agreement further provides that <u>only</u> the Agent can enforce the Security Agreement and realize upon the security granted by the Security Agreement, upon the instructions of Lender Defendants:

By accepting the benefits of this Agreement and each other Security Document, the Secured Creditors expressly acknowledge and agree that this Agreement and each other Security Document may be enforced **only by the action of the Collateral Agent acting upon the instructions of the Required Secured Creditors** and that no other Secured Creditor shall have the right individually to seek to enforce or to enforce this Agreement or to realize upon the security to be granted hereby ....

(Security Agreement, Dkt. 1-2 at §7.1 (emphasis added).)  In other words, Section 7.1 expressly limits the ability to realize upon the collateral—including through use of a credit bid—to the Agent, at the direction of Lender Defendants.  WSFS does not dispute this.  (Motion at 4 (Section 7.1 of the Security Agreement "enumerate[es] remedies the Collateral Agent may exercise at the instruction of the Required Secured Creditors").)  Lender Defendants also agree with this.  (Lender Defendants' Motion, Dkt. 48, at 9 ("Under Section 7.1 of the Security Agreement, such a transfer [*i.e.* "the right to credit bid"] would have to be executed by the Collateral Agent, following an instruction from the majority of the lenders.").)

Section 12.02(a) of the Credit Agreement states that the Agent shall have the duties set forth in the Agreements and provides for liability in the event the Agent performs those duties or fails to perform those duties in a grossly negligent fashion.  (Credit Agreement at §12.02(a) (allowing liability for "any action taken or omitted by [the Agent] ... caused by its ... gross

4

negligence or willful misconduct.").)  Similarly, Section 12.10(c) provides that the Agent "shall have no duty or liability whatsoever to the Lenders, except for its gross negligence, willful misconduct or material breach (as determined by a court of competent jurisdiction in a final and non-appealable decision)."  (*Id.* at §12.10(c).)

Finally, Section 13.12(a) of the Credit Agreement restricts the Agent from "releas[ing] all or substantially all of the Collateral (except as expressly provided in the Credit Documents) under all the Security Documents" without the consent of each of the lenders.  (Credit Agreement at §13.12(a)).   The Agent cannot release the collateral except as expressly provided in the Agreements.  This means that the Agent cannot release the collateral without an instruction from Lender Defendants, which did not occur here.

## II.     The Bankruptcy and Sale of Town Sports

In September 2020, Town Sports filed for bankruptcy in the United Stated Bankruptcy Court for the District of Delaware and defaulted on the loan.  (Compl. at ¶¶ 2, 32.) After Town Sports filed for bankruptcy, Lender Defendants orchestrated the sale of Town Sports' assets backing the Loan.  Specifically, Lender Defendants joined up with a third party, Tacit Capital LLC ("Tacit"), to establish a new entity ("NewCo"), for the purpose of purchasing the Debtors' assets and operations from the bankruptcy estate.  (*Id.* at ¶ 6.)  NewCo was to be owned in part by the Syndicate Lenders and in part by Tacit.  (*Id.*)   Lender Defendants caused $80 million of the Loan to be contributed to NewCo so that it could be included, *i.e.* "credit bid," as part of the purchase price for Town Sports' assets, free and clear of the Syndicate Lenders' liens.  (*Id.* at ¶¶ 6-7, 33-35.)

Although WSFS was not the Agent at the time Town Sports filed for bankruptcy, it was appointed Agent shortly thereafter on October 6, almost immediately after the credit bid

transaction was proposed to the Bankruptcy Court.  (Motion at 6.)  Specifically, on October 2, 2020, Town Sports filed a motion for approval of bidding procedures to determine who would purchase its assets. (Dkt. No. 52-3.) As part of the proposed bidding procedures, Town Sports included Lender Defendants' "Stalking Horse Bid," which was the credit bid transaction contemplated with Tacit and NewCo.  Under the proposed bidding procedures, "[i]f no Qualified Bids other than the Stalking Horse Bid are received by the Bid Deadline," Town Sports would cancel the auction and designate the Stalking Horse Bid as the winning bid.  (Dkt. No. 52-5 at 12.) The bidding procedures motion was set for hearing on October 9, 2020, three days after WSFS was appointed Agent.  (Dkt. 52-2.)  WSFS did not object to the motion or seek an extension of the time to consider it.

On October 9, 2020, the Bankruptcy Court approved the bidding procedures, and set various objection deadlines: October 23, 2020 as the deadline to object to the sale of Town Sports' assets, and October 30, 2020 as the deadline to object to the manner and conduct of the auction itself.  (Dkt. 52-4 at 6-7.).  Despite being appointed nearly a month prior to these deadlines, WSFS did not object to the sale of Town Sports' assets, which included the credit bid, or to the manner and conduct of the auction for the sale.

On October 26, 2020, having failed to receive any qualified bids, Town Sports provided notice that it had cancelled the auction and named NewCo the winning bidder with the Stalking Horse Bid. Notice of Cancellation, *In re Town Sports International, LLC*, No. 20-12168-CSS (Bankr. D. Del. Oct. 26, 2020), Dkt. 347.  The notice also attached the executed Asset Purchase Agreement ("APA") between Town Sports and NewCo, entered into the same day, which included the credit bid.  Notice of Cancellation, Exhibit A, Dkt. 347.  The APA "Closing Date" was set one business day after certain conditions were met, including the entry of a Sale Order.  *Id*. at §§ 2.4, 7.1(d).  On November 4, 2020, the Bankruptcy Court entered the Sale Order approving the APA.  ("Sale Order,"

Dkt. 52-6.)  WSFS did not object to the sale or credit bid at the hearing or at any other point during the sale process.  (Compl. at ¶¶ 43, 45.)

Critically, at no point in this process did Lender Defendants ever instruct the Agent to credit bid the Loan or involve the Agent in the sale process.  (*Id.* at ¶¶ 5, 35.)  WSFS admits as much.  (Motion at 14 ("Until that point, no instruction had occurred … and, therefore, WSFS had not taken any action"); *see also id.* at 1, 6, 9.)  Notwithstanding their status as creditors to the bankruptcy, Plaintiffs were unaware that Lender Defendants were orchestrating a severely flawed sale of Town Sports (including the transfer of the credit bid, and the release of the collateral), all without involving, much less instructing, the Agent.  (Compl. at ¶ 32.)  Of course, WSFS cannot claim the same, because as the party who would have received the instruction, WSFS was obviously aware that the transfer of the credit bid, over which it had sole authority, was occurring without its involvement and without having received an instruction.

### III.     The Emergency Motion and Bankruptcy Court's Ruling

In exchange for contributing $80 million of the Loan to be credit bid, Lender Defendants believed they would receive newly issued debt obligations from NewCo and that Tacit would contribute $47.5 million in funding to NewCo and cause NewCo to issue the new debt securities.  (*Id.* at ¶¶ 6-7, 34.)  However, Lender Defendants failed to secure binding commitments for such debt and funding.  (*Id.* at ¶ 34.)  After the Bankruptcy Court approved the sale of Town Sports' assets to NewCo, Tacit backed out of these (non-binding) commitments.  (*Id.* at ¶ 38.)  Instead, two new entities took the place of Tacit, but only offered $5 million in funding to NewCo and no debt securities.  (*Id.*)  Realizing that this new arrangement would result in the Loan being "credit bid" in exchange for only an equity interest in a severely undercapitalized going forward entity,

7

on November 27, 2020, Lender Defendants moved the Bankruptcy Court to halt the sale of Town Sports' assets.  ("Emergency Motion," Dkt. 52-7.)

In the Emergency Motion, Lender Defendants argued that "the credit bid was never contributed to the Buyer" because "no direction was given by the [Lender Defendants] under the Credit Agreement."  (Emergency Motion at ¶¶ 4, 29.)   As WSFS points out, Lender Defendants repeatedly asserted in the Emergency Motion that WSFS is the "party with the right to credit bid on behalf of the Prepetition Lenders."  (Motion at 7 n.3 (quoting Emergency Motion at ¶ 8).)

On November 30, 2020, Judge Sontchi held a hearing and denied the Emergency Motion from the bench, ruling that the credit bid had always been contemplated as part of the sale of Town Sports' assets, and as a result, "the transfer of the right to credit bid[] ha[s] already occurred." (11/30 Hearing Tr., Dkt. 49-10 at 27:5-6.)  Judge Sontchi did <u>not</u> hold an evidentiary hearing and did not make any ruling regarding (i) specifically how the credit bid occurred (including whether Lender Defendants ever gave an instruction), or (ii) whether WSFS's (or Lender Defendants') conduct was consistent with the Agreements.

Critically, Judge Sontchi did <u>not</u> hold, as a matter of fact, law, or equity, that the Lender Defendants instructed the Agent to credit bid the Loan.  Instead, the Bankruptcy Court held only that, based on the language of the Sale Order and the conduct of the Lender Defendants, it would be inequitable to rule that <u>NewCo</u> had not obtained the right to credit bid as part of the sale process. Therefore the Bankruptcy Court ruled that the Agent had previously transferred that right to NewCo as a matter of fact or "deemed" it to have occurred as a matter of equity:

> I think that the <u>sale order makes it clear</u> that the preliminaries, i.e. <u>the transfer of the right to credit bid, have already occurred and we're not awaiting that happening.</u> . . . <u>and to the extent that it didn't already occur pursuant to some sort of documents being exchanged among the parties I deemed it as a matter of law and to the extent I have to exercise equitable power here it did occur</u>
> . . . .

8

> I mean it's simply inequitable, too late to allow the term lenders to pull that out from under the debtors and not to give that authority for the credit bid. So, I am going to deny the motion. I will have to figure the order out a little bit. I will put a finding in the order to the effect that <u>the court order, not a finding, but an order that the court order that the credit right</u> -- **the right to credit bid has been transferred to the buyer and the buyer has authority to make that credit bid and the closing can go forward.**

(*Id*. at 27:4-28:14 (emphasis added).)

Judge Sontchi did not address whether Lender Defendants had instructed the Agent, as a matter of fact or equity.  Nor does the Bankruptcy Court's subsequent written order denying the Emergency Motion reference any instruction by the Lender Defendants.  It merely states that "pursuant to paragraph X of the Sale Order, the Prepetition Agent, on behalf of the Prepetition Lenders, has transferred the right to credit bid the Credit Bid Consideration to the Buyer, and the Buyer is authorized to contribute the Credit Bid Consideration at closing of the sale." ("Emergency Motion Order," Dkt. 49-12 at 2.)

While WSFS attempts to shoehorn such a finding into the Emergency Motion Order by stating that "such an instruction occurred pursuant to the Bankruptcy Court's Sale Order" (Motion at 9), a plain reading of the documents demonstrates otherwise.  Paragraph X of the Sale Order, the only authority cited in the Emergency Motion Order, is <u>wholly silent</u> on whether the Lender Defendants instructed WSFS to act.  (Sale Order at ¶ X.)  This is consistent with the views of the parties, whom all agree that an instruction did not occur.  (Motion at 1, 6, 9, 11, 14; Emergency Motion at ¶¶ 4, 28-29.)

Subsequently, the sale closed and NewCo purchased Town Sports' assets and operations—the Syndicate Lenders' collateral backing the entire $167 million Loan—free and clear of any liens. (Compl. at ¶ 11.)  Rather than receive equity in a fully-capitalized NewCo and newly issued debt securities, Plaintiffs were left with the rights to a miniscule interest in a severely

9

undercapitalized NewCo, which Lender Defendants described as "zero recovery."   (*Id*. at ¶¶ 11-12.)

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter … to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Further, "the district court … is required to accept as true the facts alleged in the complaint, consider those facts in the light most favorable to the plaintiff, and determine whether the complaint sets forth a plausible basis for relief." *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 443 (2d Cir. 2015).

## ARGUMENT

The Motion puts forward four arguments for dismissal of the Complaint: (i) Plaintiffs lack legal standing to bring claims under Section 12.04 of the Credit Agreement (Motion at 11-12); (ii) WSFS did not breach the Agreements because it was not required to do anything to prevent Lender Defendants from usurping its exclusive authority under the Agreements (Motion at 12-15); (iii) WSFS's conduct did not rise to the level of gross negligence (Motion at 16-19); and (iv) the Sale Order allegedly excuses the Agent's breach of Section 13.12(a) of the Credit Agreement. (Motion at 19-20.)  Each of these arguments should be rejected.

### I.     Section 12.04 of the Credit Agreement is Inapplicable

WSFS argues that Plaintiffs do not have standing to bring claims against it because of Section 12.04 of the Credit Agreement, which states that "neither any Lender nor the holder of any Note shall have any right of action whatsoever against the Administrative Agent as a result of the Administrative Agent acting or refraining from acting hereunder or under any other Credit

Document <u>in accordance with the instructions of the Required Lenders</u>." (Credit Agreement at § 12.04 (emphasis added).)  This provision is inapplicable here, as it only applies to instances when the Agent is acting upon the instructions of the majority lenders and WSFS repeatedly admits <u>it never received such an instruction</u>.  (Motion at 1, 6, 9, 11, 14.)  WSFS's reliance on Section 12.04 thus fails out of the gate.

WSFS next argues that "the Bankruptcy Court deemed that an instruction by the [Lender Defendants] occurred."  (Motion at 11.)  This is incorrect.  As discussed *supra*, the Bankruptcy Court did not address whether Lender Defendants gave an instruction to WSFS—Judge Sontchi instead held that NewCo was authorized to make the credit bid and the contribution of the credit bid by WSFS was deemed to have occurred, as a matter of fact or equity.  WSFS's citation to the November 30, 2020 hearing reveals as much:  "that contribution [of the right to credit bid] already [occurred] -- and to the extent that it didn't already occur pursuant to some sort of documents being exchanged among the parties I deemed it as a matter of law and to the extent I have to exercise equitable power here it did occur."  (Motion at 11 (alterations in original) (quoting 11/30 Hearing Tr. at 27:18-22).)  Similarly, the Emergency Motion Order's statement that WSFS transferred the right to credit bid the Loan "on behalf of the Prepetition Lenders" is silent as to whether Lender Defendants gave an instruction, (Emergency Motion Order at 2), which all agree did not occur. (Motion at 1, 6, 9, 11, 14; Emergency Motion at ¶¶ 4, 28-29; Compl. at ¶¶ 5, 35.)

Even if an instruction occurred, which it did not, Section 12.04 still cannot act to exculpate WSFS, as New York law prohibits parties from shielding themselves from claims of gross negligence.  *See Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540, 554 (1992) (holding that, in New York, "a party may not insulate itself from damages caused by grossly negligent conduct" through an exculpatory clause); *Kalisch-Jarcho, Inc. v. City of New York*, 58 N.Y.2d 377, 384-85 (1983)

("[A]n exculpatory agreement, no matter how flat and unqualified its terms, will not exonerate a party from liability under all circumstances …. [I]t will not apply to exemption of willful or grossly negligent acts."). Accordingly, even if Section 12.04 applies, it is unenforceable. For example, in *Mex. Infrastructure Fin., LLC v. Corp. of Hamilton*, No. 17-CV-6424 (VSB), 2019 U.S. Dist. LEXIS 41742, at *31 (S.D.N.Y. Mar. 14, 2019) the court permitted claims for gross negligence to proceed despite the presence of an exculpation clause stating "[i]n no event shall [Defendant BNYM] be liable (i) for acting in accordance with or relying upon … any instruction, notice, demand, certificate or document from any Interested Party."

## II.   WSFS had an Obligation to Act Under the Agreements

### a.   The Agreements Impose Duties on WSFS

Apart from its standing argument, the crux of WSFS's Motion is that the Agreements do not impose any affirmative duty to act on WSFS, and therefore Plaintiffs' allegations that "the Agent sat and did nothing" while Lender Defendants caused WSFS to credit bid the Loan cannot constitute a breach. (Motion at 12-13.) This is wrong. In short, WSFS failed to perform its express duties under the Agreements, *i.e.*, credit bidding the loan, because it permitted Lender Defendants to perform this duty in its stead. The Agreements specifically provide for liability for WSFS for both its actions <u>and inactions</u>. (Credit Agreement at § 12.02(a).)

The Agreements are clear that only the Agent can realize upon the collateral, including through a credit bid of the Loan, and only upon instructions from the Lender Defendants. (Security Agreement at § 7.1.) This responsibility is one of the Agent's "duties . . . expressly set forth in this Agreement," which WSFS has an obligation to carry out in a non-grossly negligent manner. (Credit Agreement at § 12.02(a).) The Agreements are equally clear that any actions taken by WSFS that are not "in accordance with the provisions" of the Agreements are not "authorized." (Credit Agreement at § 12.10(a).)

12

Pursuant to these provisions, because WSFS was never given an instruction to credit bid the Loan, neither it, nor the Lender Defendants, were permitted to do so.  But, as pled in the Complaint, (i) Lender Defendants' conduct caused WSFS to contribute $80 million of the Loan to NewCo so that it could be "credit bid" as part of the purchase price for Town Sports' assets, and (ii) WSFS did nothing to stop Lender Defendants or the credit bid.  (Compl. at ¶¶ 43, 45.)  As a result, when the Lender Defendants moved to halt the sale, the Bankruptcy Court held that it was "too late" to stop the sale of Town Sports' assets, and thus "deemed" the credit bid to have been made by the Agent, notwithstanding the lack of instruction from Lender Defendants.  (11/30 Hearing Tr. at 27:3-28:14.)

By allowing the Lender Defendants to commit WSFS to credit bid without receiving an instruction, WSFS allowed Lender Defendants to usurp its sole authority to credit bid the Loan. This conduct violated Sections 12.02(a) and 12.10 of the Credit Agreement and Section 7.1 of the Security Agreement.  Such a breach is plainly contemplated by the Agreements.  Section 12.02(a) of the Credit Agreement provides for liability for WSFS for "any action taken or omitted by it" in performance of its duties if caused by its gross negligence.  WSFS's failure to prevent Lender Defendants from appropriating its exclusive authority, resulting in the loss of tens of millions of dollars, is an actionable omission.

b.   Lender Defendants Were Not "Authorized" to Credit Bid the Loan

WSFS defends its failure to prevent Lender Defendants from causing the transfer of the credit bid without an instruction by arguing that Lender Defendants' "actions were authorized under the terms of the Credit Agreement and Security Agreement."  (Motion at 12-13.)  This position conflicts with the plain language of the Agreements.  To begin, the Agreements only give the Lender Defendants the right to instruct the Agent to credit bid—not the right to cause the Loan

to be credit bid themselves.  There is a plain difference between the ability to direct an action and undertake that action oneself.

WSFS's position also runs contrary to the structure and purpose of the Agreements.  In granting WSFS the exclusive authority to credit bid the Loan, the Agreements require WSFS to do so in a non-grossly negligent manner.  (Credit Agreement at § 12.02(a).)  As a result, all lenders (including Lender Defendants) would have recourse in the event WSFS committed gross negligence in credit bidding the Loan (including by doing so in exchange for "zero recovery"). Lender Defendants are not subject to the same standard because they are not authorized to credit bid the Loan in the first instance.  Thus, if Lender Defendants were permitted to credit bid without involving the Agent and be subject to no liability, this would render the protection provided by Section 12.02(a) illusory.

WSFS next asserts that it was not required to object because the Bankruptcy Court "expressly authorized" Lender Defendants' conduct when it "deemed the instruction to have occurred." (Motion at 13-14.)  As noted, this again misstates the Bankruptcy Court's holding.  As set forth above, Judge Sontchi only "deemed" <u>that the credit bid occurred</u> (due to Lender Defendants' conduct), but did not hold that Lender Defendants instructed the Agent to credit bid the loan.  Whether instructions were actually given (or deemed to have been given) was simply not discussed by the Bankruptcy Court at either the November 30 hearing or in the Emergency Motion Order.

        c.   <u>Regardless of Whether an Instruction Was Given, WSFS Breached the Agreements.</u>

There is no dispute that, due to Lender Defendants' conduct, WSFS transferred the right to credit bid the Loan to NewCo, which was then credit bid as part of the Sale of Town Sports' assets. WSFS contends that the Bankruptcy Court "deemed" Lender Defendants to have instructed WSFS

to credit bid the Loan, thus relieving it from any liability under the Agreements.  While it is not true that the Bankruptcy Court addressed this question, the existence of an instruction from Lender Defendants has no impact on whether WSFS breached the Agreements. One of two scenarios necessarily took place: either (i) WSFS transferred the right to credit without receiving an instruction from Lender Defendants, or (ii) WSFS transferred the right to credit bid after receiving instruction from Lender Defendants.  Both of those scenarios entails a breach by the Agent.

Under the first scenario, WSFS breached Sections 12.02(a) and 12.10 of the Credit Agreement and Section 7.1 of the Security Agreement by abdicating its exclusive authority to Lender Defendants (as set forth above), which resulted in WSFS credit bidding the Loan without receiving an instruction from Lender Defendants.  Under the second scenario, WSFS breached Section 12.02(a) of the Credit Agreement by credit bidding the Loan in a grossly negligent manner, *i.e.*, failing to obtain value in exchange for releasing $80 million of the Loan and the collateral backing the entire $167 million Loan.  Further, as discussed below, WSFS breached Section 13.12(a) of the Credit Agreement by releasing the collateral in a manner inconsistent with the Agreements without consent of each lender.  Each of these breaches are set forth in the Complaint. (Compl. at ¶¶ 5, 60-61, 67-68.)  The Motion should be denied as a result.

### III.    The Complaint Adequately Pleads Gross Negligence

In order to plead gross negligence, a complaint must state specific actions (or inaction) that evinces a reckless disregard for the rights of plaintiff or smacks of intentional wrongdoing. *Sommer*, 79 N.Y.2d at 554.  The Complaint pleads exactly this.

As Agent, WSFS knew that it was the party solely authorized to realize upon the Loan collateral—worth tens of millions of dollars—in the event of default.  (Compl. at ¶ 29.)  As a result, WSFS knew that it owed a duty to Plaintiffs to not undertake this duty in a grossly negligent

fashion.   Notwithstanding this knowledge, WSFS allowed Lender Defendants to take this responsibility from it by committing WSFS to contribute the Loan to Newco so that it could be credit bid, without any involvement of WSFS.   (*Id*. at ¶¶ 5, 42-43, 60.)   By allowing Lender Defendants to perform the duties that were solely assigned to it—without objection—WSFS stood by while Lender Defendants' impermissible conduct trampled on the rights of Plaintiffs.   (*Id*.) WSFS's abdication of its duties and responsibilities to Plaintiffs under the Agreements "evinced a reckless disregard" for Plaintiffs' rights and the other lenders' rights, ultimately costing them tens of millions of dollars, and constitutes both a breach of the Agreements and gross negligence.  *See, e.g., Columbia Pictures Indus. v. Liberty Cable, Inc.*, 919 F. Supp. 685, 690-91 (S.D.N.Y. 1996) ("indifference to present legal duty and utter forgetfulness of legal obligations" can constitute gross negligence) (quoting *Doe v. New York City Dep't. of Social Services*, 649 F.2d 134, 143 n.4 (2d Cir. 1980)).[2]

WSFS's <u>disagreement</u> that the conduct described in the Complaint rises to the level of gross negligence is not basis for dismissal.  Gross negligence is a paradigmatic issue of fact, and thus "[w]hether a breach constituted gross negligence ... generally should not be addressed on a motion to dismiss."  *House of Eur. Funding I, Ltd. v. Wells Fargo Bank, N.A.,* No. 13 Civ. 519 (RJS), 2014 U.S. Dist. LEXIS 49894, at *28 (S.D.N.Y. Mar. 31, 2014); *Clark St. Wine & Spirits v. Emporos Sys. Corp.*, 754 F. Supp. 2d 474, 481 (E.D.N.Y. 2010) ("Determining whether acts or omissions constitute gross negligence is reserved to the jury."); *Robin Bay Assocs., LLC v. Merrill*

---

[2] The cases WSFS relies on say no different.  In *Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*, No. 03 Civ. 1537 (MBM), 2003 WL 23018888, at *12 (S.D.N.Y. Dec. 22, 2003) and *Tevdorachvili v. The Chase Manhattan Bank*, 103 F. Supp. 2d 632, 644 (E.D.N.Y. 2000), neither complaint alleged any facts demonstrating a reckless disregard for others' rights, and both contained only a single sentence describing the alleged conduct as "reckless." That is a far cry from the instant case, where WSFS's conduct is detailed throughout the Complaint.  (Compl. at ¶¶ 5, 42-43, 60.)

*Lynch & Co.*, No. 07 Civ. 376 (JMB), 2008 WL 2275902, at *6 (S.D.N.Y. June 3, 2008) (At the pleading stage, "where no discovery has been conducted, and where the inquiry is to the existence or nonexistence of gross negligence, the ultimate standard of care is different from ordinary negligence, but the question nevertheless remains a matter for jury determination." (internal quotation marks and brackets omitted)) (quoting *Internationale Nederlanden (U.S.) Capital Corp. v. Bankers Trust Co.*, 689 N.Y.S.2d 455, 460 (1st Dep't 1999)).[3]

The same is true where a court has to determine the application of a provision that exculpates liability except for gross negligence, because whether the defendants is so exculpated turns on a question of fact.  *See MBIA Ins. Corp. v. Cooperatieve Centrale Raiffeisen-Boerenleenbank B.A.*, No. 09 Civ. 10093(RJS), 2011 WL 1197634, *15 (S.D.N.Y., Mar. 25, 2011) (declining to rule on the application of exculpatory clause without the benefit of discovery because "[a]s a general matter, determinations as to bad faith, recklessness, and intent are factual inquiries that are more appropriately resolved by the fact-finder."); *Tillage Commodities Fund, L.P. v. SS&C Techs., Inc.*, 2016 NY Slip Op. 32586(U), at **2 (Sup. Ct. N.Y. Cnty. 2016) (declining to find that "the limitation on liability clause bars this action as a matter of law [because] [o]rdinarily the question of gross negligence is a matter to be determined by the trier of fact." (internal quotation marks omitted)).

Finally, WSFS attempts to deflect away from its own gross negligence by arguing that, even if it should have prevented Lender Defendants from usurping its authority under the Agreements, "Plaintiffs were in the same position as WSFS," and thus should have done the same. (Motion at 18.)  This is baseless.  As set forth in the Complaint, Plaintiffs were unaware that Lender

---

[3] WSFS's position that its conduct did not amount to gross negligence is predicated on the Lender Defendants being "authorized" to credit bid the Loan without instructing the Agent themselves, despite the express language in the Agreements stating otherwise.  (Motion at 17.)  As discussed in Section II(b), *supra*, this is wrong.

Defendants were causing the Loan to be transferred without involving WSFS.  (Compl. at ¶ 32.)
WSFS cannot argue the same.  As the party with the sole responsibility to credit bid the Loan,
WSFS would obviously know whether Lender Defendants were performing this duty without it,
and would be aware if it received an instruction or not.  WSFS's contention that Plaintiffs'
allegations are deficient because "the Complaint does not allege that WSFS possessed any more
knowledge than Plaintiffs" defies common sense.  (Motion at 18.)[4]

IV.    The Bankruptcy Court's Approval of the Sale is Irrelevant

WSFS argues that it could not have breached Section 13.12(a) of the Credit Agreement
because the sale of Town Sports' assets (which unequivocally released the liens on the collateral)
was "not a release of liens [in violation of the Agreements], but rather the exercise of a remedy
under the Security Agreement, which was authorized pursuant to Section 363(f) of the Bankruptcy
Code."  (Motion at 19.)  This is misplaced, as whether or not the sale was approved by the
Bankruptcy Court has no impact on whether WSFS's conduct violated the Agreements.

Section 13.12(a) of the Credit Agreement provides that, "without the consent of each
Lender," all or substantially all of the collateral may not be released, except as <u>expressly provided
in the Agreements</u>.  (Credit Agreement at § 13.12(a).)  Ordinarily, a credit bid by the Agent, at the
direction of the Lender Defendants, could constitute a release of the collateral that is "expressly

---

[4] WSFS's position that Plaintiffs are required to indemnify it for all expenses related to this litigation pursuant to
Section 12.06 of the Credit Agreement is mistaken.  (Motion at 18-19.)  As an initial matter, because WSFS engaged
in gross negligence, the indemnification provision is inapplicable.  (Credit Agreement at § 12.06 (carving out
indemnification for any expenses "resulting from the Administrative Agent's … gross negligence or willful
misconduct.").)  Further, even if WSFS is found to have not committed gross negligence, Section 12.06 is still
inapplicable to attorneys' fees incurred in connection with the instant action under New York law.  "Because promises
in a contract to indemnify the other party's attorney's fees and related costs run against the grain of the accepted policy
that parties are responsible for their own attorneys' fees, courts applying New York law do not infer a party's intention
to indemnify such costs unless the intention to do so is unmistakably clear from the language of the promise."
*Homeward Residential, Inc. v. Sand Canyon Corp.*, 298 F.R.D. 116, 132 (S.D.N.Y. 2014) (internal citation and
quotation marks omitted) (citing *Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 492 (1989)); *see also
In re Refco Sec. Litig.*, 890 F. Supp. 2d 332, 350 (S.D.N.Y. 2012) (Rakoff, J.) ("[A]ny ambiguity on the question …
requires a finding that attorney fees in suits between the contracting parties are not covered.").  The indemnity
provision here does not unmistakably cover litigation between the parties to the Agreements.

provided in" the Agreements. (Security Agreement at § 7.1(iv).) But that is not what happened here. Instead, WSFS was deemed to have transferred the credit bid to NewCo, without any instruction from Lender Defendants to WSFS, in direct violation of the Security Agreement. Thus, WSFS's failure to release the collateral in a manner that was "expressly provided in" the Agreements (and without obtaining consent of each of the lenders) constitutes a breach of Section 13.12(a).

This is true regardless of whether the Bankruptcy Court approved the sale pursuant to Section 363(k) of the Bankruptcy Code. *Credit Agricole Corp. v. BDC Fin., LLC* is instructive on this point. 2017 NY Slip Op. 30134(U) (Sup. Ct. N.Y. Cnty. 2017). Like the instant case, *Credit Agricole* concerned a credit bid transaction where a newly-formed entity purchased the debtor in exchange for debt forgiveness (among other things), and the newly-formed entity was to be owned by the lenders. *Id*. at **8-15. As part of the credit bid transaction, which was approved by the bankruptcy court, the majority lenders directed the agent to extinguish the loan and release all liens and security interests on that loan. *Id*. at **12-13. Minority lenders brought suit, alleging breach of a provision nearly identical to Section 13.12(a). *Id*. at **15-17. In essence, plaintiffs alleged the majority lenders effectuated a waiver of the operative loan agreement without their consent by directing the agent to release the collateral through the credit bid transaction. *Id*.

Rejecting defendants' motion for summary judgment, the court recognized that the loan agreement required consent to release the loan collateral, "except as provided for in the credit documents." *Id*. at **24. The court permitted plaintiffs' claim to proceed to trial because, while a credit bid permitted under bankruptcy law was a remedy available under the operative loan documents, the defendant agent had not put forward sufficient evidence that the manner in which it credit bid the loan was consistent with the loan documents. *Id*. at **25.

This holding is consistent with the claims as plead.  Even if a sale involving a credit bid, approved by the Bankruptcy Court, is a permitted remedy under Section 7.1 of the Security Agreement, the process in which the credit bid was made may be challenged.

The cases cited by WSFS, *In re GWLS Holdings, Inc.*, No. 08-12430 (PJW), 2009 Bankr. LEXIS 378 (Bankr. D. Del. Feb. 23, 2009), *In re Metaldyne Corp.*, 409 B.R. 671 (Bankr. S.D.N.Y. 2009), and *In re Chrysler LLC*, 405 B.R. 84 (S.D.N.Y. 2009), do not state otherwise.  In each of those instances, the minority creditors argued that because the subject sales involving credit bids (the "Credit Bid Transactions") resulted in the release of collateral, the Credit Bid Transactions were unauthorized remedies under the pertinent loan agreements and required the consent of each lender under provisions similar to Section 13.12(a).  *See GWLS Holdings, Inc.*, 2009 Bankr. LEXIS 378 at *8; *Metaldyne Corp.*, 409 B.R. at 675; *In re Chrysler*, 405 B.R. at 119.  Unlike here, the objecting creditors in *GWLS*, *Metaldyne*, and *Chrysler* objected to the Credit Bid Transactions as requiring consent, and did not contest the manner in which the Credit Bid Transactions were conducted.  In each instance, the court found that the underlying Credit Bid Transactions did not violate the "consent" provisions in the operative loan documents because they were carried out consistent with the agreements' terms.  *See GWLS Holdings, Inc.*, 2009 Bankr. LEXIS 378 at *11-12 (finding a credit bid within the remedies provided to the collateral agent, and thus consistent with loan documents); *Metaldyne Corp.*, 409 B.R. at 679 (same); *In re Chrysler*, 405 B.R. at 119 (same).  This is not the case here.   None of these cases include an allegation that the agent disregarded the terms of the loan documents, or credit bid the subject loan without receiving the required instruction from the majority lender group.  As such, these cases do not apply here.[5]

---

[5] Moreover, none of the objections lodged in *GWLS Holdings, Inc.*, *Metaldyne Corp.*, or *Chrysler* were asserted as separate lawsuits, and none were subject to Federal Rule of Civil Procedure 8(a)'s pleading standards.

V.      **WSFS Request for a Transfer Should be Denied**

Although WSFS requests that this action be transferred to the Bankruptcy Court in the event its Motion is denied, it provides no argument as to why the request for transfer is appropriate or should be granted, other than to incorporate the arguments made by Lender Defendants' motion to dismiss.  (Motion at 1.)  Accordingly, WSFS's request for transfer should be denied for the same reasons set forth in Plaintiffs' opposition to Lender Defendants' motion to dismiss, which are incorporated herein by reference.

## **CONCLUSION**

For all the reasons above, the Court should deny WSFS's Motion.


Dated:   New York, New York
           October 4, 2021

                                        MCKOOL SMITH, P.C.

                                        By: */s/ Kyle A. Lonergan*
                                        Kyle A. Lonergan
                                        (klonergan@mckoolsmith.com)
                                        James H. Smith
                                        (jsmith@mckoolsmith.com)
                                        One Manhattan West, 50th Floor
                                        395 9th Avenue
                                        New York, NY 10001
                                        Telephone: (212) 402-9400
                                        Facsimile: (212) 402-9444

                                        John Sparacino (to apply for admission *pro hac vice*)
                                        (jsparacino@mckoolsmith.com)
                                        600 Travis St # 7000
                                        Houston, TX 77002
                                        Telephone: (713) 485-7300
                                        Facsimile: (713) 485-7344