UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KENNEDY LEWIS PARTNERS MASTER FUND LP and KENNEDY LEWIS PARTNERS MASTER FUND II LP,

                Plaintiffs,

– against –

ABRY PARTNERS, LLC, APEX CREDIT PARTNERS, LLC, CIFC ASSET MANAGEMENT LLC, ELLINGTON MANAGEMENT GROUP, L.L.C., TRIMARAN ADVISORS MANAGEMENT, L.L.C., and WILMINGTON SAVINGS FUND SOCIETY, FSB,

                Defendants.

21 Civ. 4690 (ALC)

ORAL ARGUMENT REQUESTED

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION BY DEFENDANT WILMINGTON SAVINGS FUND SOCIETY, FSB TO DISMISS THE COMPLAINT OR TRANSFER VENUE**

FRESHFIELDS BRUCKHAUS DERINGER US LLP
Madlyn Gleich Primoff
Eric Avery Brandon
601 Lexington Ave., 31st Floor
New York, NY 10022
Telephone: 212.277.4000

*Attorneys for Defendant Wilmington Savings Fund Society, FSB*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................ 1

I.   PLAINTIFFS LACK STANDING UNDER SECTION 12.04 OF THE CREDIT AGREEMENT ............ 3

II.  WSFS HAD NO DUTY TO ATTEMPT TO STOP THE SALE ......................................................... 4

III. PLAINTIFFS' CLAIMS ARE BARRED BY COLLATERAL ESTOPPEL ......................................... 6

IV.  PLAINTIFFS FAILED TO PLEAD FACTS PLAUSIBLY SUGGESTING WSFS WAS GROSSLY NEGLIGENT ................................................................................................ 7

V.   THE CLAIMS ASSERTED AGAINST THE AGENT IN COUNT 3 FAIL BECAUSE REQUIRED LENDERS ARE PERMITTED TO DIRECT THE EXERCISE OF REMEDIES .................. 9

CONCLUSION ............................................................................................................................ 10

## TABLE OF AUTHORITIES

**Cases**                           **Page**

*Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*,
   No. 03-cv-1537 (MBM), 2003 WL 23018888 (S.D.N.Y. Dec. 22, 2003)..................8

*Columbia Pictures Indus. v. Liberty Cable, Inc.*,
   919 F. Supp. 685 (S.D.N.Y. 1996) ........................................................................8

*Coman v. Lackey*,
   80 N.Y. 345 (N.Y. 1880) ........................................................................................2

*Credit Agricole Corporate v. BDC Finance, LLC*,
   No. 651989/10, 2017 WL 375324 (N.Y. Sup. Ct. Jan. 20, 2017)............................10

*House of Eur. Funding I, Ltd. v. Wells Fargo Bank, N.A.*,
   No. 13 CIV. 519 RJS, 2014 WL 1383703 (S.D.N.Y. Mar. 31, 2014)........................9

*In re Soundview Elite Ltd.*,
   No. 14 Civ. 7045 (JPO), 2014 WL 7009070 (S.D.N.Y. Dec. 12, 2014) ...................6

*Proctor v. LeClaire*,
   715 F.3d 402 (2d Cir. 2013)....................................................................................6

*Retty Fin., Inc. v. Morgan Stanley Dean Witter & Co.*,
   293 A.D.2d 341 (1st Dep't 2002) ...........................................................................8

*Stream TV Networks, Inc. v. SeeCubic, Inc.*,
   250 A.3d 1016 (Del. Ch. 2020)...............................................................................2

*Sweedler v. Oboler*,
   319 N.Y.S.2d 89 (N.Y. Sup. Ct. 1971), *aff'd*, 325 N.Y.S.2d 996 (1st Dep't
   1971) .......................................................................................................................2

*Tevdorachvili v. Chase Manhattan Bank*,
   103 F. Supp. 2d 632 (E.D.N.Y. 2000) ....................................................................9

**Statutes**

11 U.S.C. § 363(f)..............................................................................................................10

**Other Authorities**

JUSTICE JOSEPH STORY, COMMENTARIES ON EQUITY JURISPRUDENCE ............................2

Defendant WSFS, as Agent,[1] respectfully submits this reply memorandum of law in support of its motion to dismiss the Complaint with prejudice or, alternatively, to transfer this action to the Bankruptcy Court.

## PRELIMINARY STATEMENT

Plaintiffs' arguments must fail because they are based on the faulty premise that Required Lenders gave no instruction to the Agent to transfer the right to credit bid to NewCo even though the Bankruptcy Court plainly determined otherwise "***as a matter of law***." Consequently, Plaintiffs lack standing and the Agent is exculpated from liability pursuant to Sections 12.04, 12.02, and 12.10 of the Credit Agreement, and any assertion of gross negligence in the face of the Bankruptcy Court's determination "as a matter of law" is specious. Even if no instruction were given (which it clearly was), Plaintiffs' breach of contract claims fail because the operative agreements unambiguously state that the Agent had no relevant duty to act in opposition to the Sale.

At the November 30, 2020 hearing (the "**Hearing**") concerning Required Lenders' Emergency Motion, the Bankruptcy Court concluded:

- I think it's too late not to grant that authority [to NewCo to credit bid].

- I think that the sale order makes it clear that the "***preliminaries***" [which obviously include the direction to the Agent to transfer authority to NewCo to credit bid] have already occurred.

- To the extent it [the transfer of the right to credit bid] didn't already occur . . . , I ***deemed*** it as a matter of law and to the extent I have to exercise ***equitable power*** here it did occur.

- So, I am finding that the buyer has the authority to credit bid.

Brandon Decl., Ex. A, Nov. 30, 2020 Hearing Tr. at 25:17–27:25 (emphasis added).

---

[1] Any capitalized term used herein but not defined herein shall have the meaning ascribed to that term in WSFS' opening brief ("**Opening Br.**"), Dkt. 51.

1

Accordingly, the record before the Bankruptcy Court (which sits as a court of equity) unmistakably confirms that the Agent was deemed to have been directed by Required Lenders, in accordance with Section 12.10 of the Credit Agreement and Section 7.1 of the Security Agreement, to transfer the right to credit bid to NewCo. The Bankruptcy Court expressly stated on the record not only that "the preliminaries have already occurred," but also that it was exercising its "equitable power" "as a matter of law."

In exercising its equitable power, the Bankruptcy Court was necessarily determining as a matter of law that the Agent had been instructed or directed to transfer the right to credit bid. It is a bedrock principle of equity jurisdiction and equity jurisprudence, adopted by the Court of Appeals for at least 150 years, that "[c]ourts of equity regard the substance, and not the form of a transaction, and one of the favorite maxims is to regard that as done, which has been agreed to be done, and ought to have been done." *Coman v. Lackey*, 80 N.Y. 345, 350 (N.Y. 1880); *see Sweedler v. Oboler*, 319 N.Y.S.2d 89, 91 (N.Y. Sup. Ct. 1971), *aff'd*, 325 N.Y.S.2d 996 (1st Dep't 1971); *cf. Stream TV Networks, Inc. v. SeeCubic, Inc.*, 250 A.3d 1016, 1029–30 (Del. Ch. 2020).

In so holding, the Court of Appeals relied on Justice Story's landmark treatise on equity jurisprudence, which states as follows:

> The true meaning of this maxim is, that equity will treat the subject as to collateral conveyances and incidents in the same manner as if the final acts contemplated by the parties had been executed exactly as they ought to have been, not as the parties might have executed them.

*Coman*, 80 N.Y. at 350 (quoting JUSTICE JOSEPH STORY, COMMENTARIES ON EQUITY JURISPRUDENCE §§ 64–69. Here, the instruction by Required Lenders to the Agent is collateral to and incidental to the transfer to NewCo of the right to credit bid and the exercise of the credit bid itself, which the Bankruptcy Court determined had already occurred.

2

The Bankruptcy Court addressed this issue head on at the Hearing, and ***expressly rejected*** the Required Lenders' assertion that they never gave an instruction to the Agent to transfer the credit bid. Nov. 30, 2020 Hearing Tr. at 27:13–21 ("[N]ow all of a sudden the term lenders say we never gave the authority for the buyer to credit bid, it's just too late. . . . I deem[] it as a matter of law.").

Given that the Bankruptcy Court exercised its equitable power and deemed that the Agent had been instructed to transfer the right to credit bid, Plaintiffs lack standing to assert their claims against WSFS pursuant to the express terms of Section 12.04 of the Credit Agreement. Contrary to imposing a duty on WSFS to block a transaction that Required Lenders were properly pursuing in accordance with the provisions of the Credit Agreement (*see* §§ 12.02, 12.10), the Credit Agreement (*see* § 12.03) expressly stated that Plaintiffs ("without reliance" on the Agent) "shall" make their "own independent investigation" of the financial condition and affairs of the borrower and determine whether or not to "any take action in connection herewith." Having foregone their express right to investigate and act for themselves, Plaintiffs cannot impose a duty on the Agent that simply does not exist under the relevant agreements. For these reasons, and the reasons set forth below, the Complaint should be dismissed with prejudice or the venue of this action should be transferred to the Bankruptcy Court.

I.  **PLAINTIFFS LACK STANDING UNDER SECTION 12.04 OF THE CREDIT AGREEMENT**

Section 12.04 of the Credit Agreement on its face bars this action because the Bankruptcy Court deemed that the Agent was instructed to transfer the right to credit bid. Furthermore, while Plaintiffs attempt to graft an unfounded claim of gross negligence onto their Section 12.04 argument, the fact of the matter is that Section 12.04 does not purport to carve out liability for gross negligence; it simply sets forth the circumstances in which Lenders lack standing to sue.

Plaintiffs cannot avoid the straightforward application of Section 12.04 and attempt to manufacture standing (where none exists) by making specious claims of gross negligence.

## II.   WSFS HAD NO DUTY TO ATTEMPT TO STOP THE SALE

Based on the express terms of the Credit Agreement (including Sections 12.10, 12.02 and 12.03), WSFS simply had no duty to act to stop the Sale.  First, as explained in WSFS' opening brief, Opening Br. at 12–14, the Required Lenders' conduct in pursuing the Stalking Horse Transaction and the Sale was well within their rights.  *See* Credit Agreement § 12.10 (any action taken by Required Lenders shall be binding on all Lenders); Security Agreement § 7.1 (Required Secured Lenders entitled to instruct Collateral Agent as to exercise of remedies).

Second, Section 12.02 of the Credit Agreement (which Plaintiffs quote only selectively) makes it abundantly clear that the Agent had no duty to act in opposition to the Required Lenders' conduct in pursuing the Sale.  *See* Credit Agreement § 12.02(a) (providing that Agent has no duties "except those expressly set forth in this Agreement and in the other Credit Documents;" Agent's duties "shall be mechanical and administrative in nature;" Agent shall not have "a fiduciary relationship in respect of any Lender;" and nothing "express ***or implied***" imposes any obligation upon the Agent, except as expressly set forth in the Agreements) (emphasis added).  As a result, Plaintiffs' argument that the Credit Agreement and the Security Agreement contemplated potential liability for both actions and inactions of WSFS is directly contradicted by the unambiguous language of the Credit Agreement and the Security Agreement. In the absence of a specific affirmative duty, the exculpation provisions of Sections 12.02(a) and 12.10(c) of the Credit Agreement in favor of the Agent are dispositive.[2]

---

[2] Plaintiffs argue in passing that even if an instruction did occur, "WSFS breached Section 12.02(a) of the Credit Agreement by credit bidding the Loan in a grossly negligent manner." Plaintiffs' Memorandum of Law in Opposition to WSFS' Motion to Dismiss ("**Opp.**"), Dkt. 54, at 15.  Plaintiffs' contention is a blatant misstatement of the purely administrative role of the

4

Finally, pursuant to Section 12.03 of the Credit Agreement (which Plaintiffs pretend does not exist) and consistent with the Agent's duties being purely "mechanical and administrative," the Agent was explicitly *not* "required to make any inquiry concerning either the performance or observance of any of the terms, provisions or conditions of this Agreement or any other Credit Document." Rather, Section 12.03 of the Credit Agreement plainly imposed that responsibility *upon Plaintiffs*.

> Lack of Reliance on the Administrative Agent. Independently and without reliance upon the Administrative Agent, each Lender. . . has made and ***shall continue to make*** (i) ***its own independent investigation*** of the ***financial condition and affairs*** of Holdings and its Subsidiaries ***in connection with the making and the continuance of the Loans*** <u>***and the taking or not taking of any action in connection herewith***</u>.

Credit Agreement § 12.03 (emphasis added). Plaintiffs admit that they did not undertake the investigation they were required to make under Section 12.03. *See* Opp. at 7 ("Notwithstanding their status as creditors to the bankruptcy, Plaintiffs were unaware that Lender Defendants were orchestrating a severely flawed sale of Town Sports.").[3] Plaintiffs' admitted failure to undertake such investigation or take any action they deemed necessary is fatal to their claims. They cannot blame WSFS (whose functions were purely mechanical and administrative) for their own failure to take any action they felt necessary to protect their interests – a right and an obligation expressly allocated to them pursuant to Section 12.03.

---

Agent. Pursuant to the Credit Agreement, it is Required Lenders (not the Agent) that determine the appropriate course of action pursuant to Sections 12.02 and 12.10 and it is Plaintiffs' responsibility pursuant to Section 12.03 to conduct their own investigation and take any action they deem appropriate – all expressly ***without*** reliance on the Agent.

[3] Plaintiffs' arguments are simply disingenuous. Plaintiffs chose not to act in October and November of 2020, and now they blame WSFS and the Required Lenders for Plaintiffs' alleged losses and have concocted excuses for why they remained supine throughout.

### III.    PLAINTIFFS' CLAIMS ARE BARRED BY COLLATERAL ESTOPPEL

Plaintiffs' contention that they were unaware that the Lender Defendants were orchestrating a severely flawed sale of Town Sports lacks credibility, is incorrect as a matter of law, and bespeaks a transparently baseless attempt to avoid a determination that they are collaterally estopped from pursuing their claims against the Agent.[4]  Given that the Emergency Motion was filed on the public record in the Bankruptcy Court and that Plaintiffs had appeared in the Bankruptcy Court proceedings, their statements that they were unaware that the Required Lenders were causing the loan to be transferred without involving the Agent, Opp. at 17–18, are not credible.  *See, e.g.*, Brandon Decl., Ex. G, Emergency Motion ¶¶ 4, 24–25, 29; *see also* Required Lenders' Br. at 7–12 (detailing, among other things, Plaintiffs' ongoing knowledge of the Town Sports bankruptcy and their presence at the critical hearings relating to the Town Sports sales plans).  Plaintiffs had actual knowledge as a matter of fact and law.

Despite their actual knowledge, Plaintiffs still did not object.  That failure dooms their claims here because they are collaterally estopped from arguing that the Sale's "preliminaries," including an instruction to the Agent, did not occur.  *See In re Soundview Elite Ltd.*, No. 14 Civ. 7045 (JPO), 2014 WL 7009070, at *2 (S.D.N.Y. Dec. 12, 2014) (collateral estoppel "bars litigation of an issue where '(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.'" (quoting *Proctor v. LeClaire*, 715 F.3d 402, 414 (2d Cir. 2013))).  The identical issue here (namely, whether the Agent was instructed to transfer the right to credit bid to NewCo) was raised and litigated in connection with the Emergency Motion.

---

[4] WSFS joined Sections I (*res judicata* and collateral estoppel) and IV (transfer) of the Required Lenders' Memorandum of Law in Support of their Motion to Dismiss ("**Required Lenders' Br.**"), Dkt. 48.

6

The issue was presented to the Bankruptcy Court in the Emergency Motion, and explicitly (as well as necessarily) resolved by the Bankruptcy Court. Plaintiffs were parties in the Bankruptcy Court proceedings and thus had the opportunity to litigate the issues in connection with the Emergency Motion. Having sat on their hands in the Bankruptcy Court, they cannot be permitted to lie in wait for six months and then attempt to assert claims against the Agent in this action – claims that they, not WSFS, were required to raise. They are collaterally estopped from doing so. *See* Required Lenders' Br. at 15–18.

### IV. PLAINTIFFS FAILED TO PLEAD FACTS PLAUSIBLY SUGGESTING WSFS WAS GROSSLY NEGLIGENT

Because Plaintiffs plead no facts to plausibly support a finding that WSFS was grossly negligent by not attempting to stop the Sale, their claims fail under the broad exculpation clauses of the Credit Agreement. Credit Agreement §§ 12.02(a), 12.10(c). Plaintiffs advance their conclusory label of "gross negligence" solely to try to overcome these broad exculpation provisions of the Credit Agreement. But their arguments on gross negligence merely repackage their baseless arguments that WSFS had a duty to stop the Sale.[5] The Agent cannot be found negligent, let alone grossly negligent, for failing to pursue action that it was neither empowered nor required to take.

Plaintiffs argue that WSFS was grossly negligent by "allowing Lender Defendants to perform the duties that were solely assigned to it—without objection—WSFS stood by while Lender Defendants' impermissible conduct trampled on the rights of Plaintiffs." Opp. at 16. First, this theory fails because it was ***not*** the role or obligation of the Agent, which had only

---

[5] To the extent Plaintiffs assert that WSFS was grossly negligent because the Sale ended up returning little value, Opp. at 15, Plaintiffs confuse process with results. The process of the Sale was appropriate and authorized. That the process ultimately ended up returning little value does not support a proper allegation of gross negligence because the process was duly authorized, and the Agent had ***no duty*** to investigate or otherwise take any affirmative action in this regard. Again, that was Plaintiffs' job. Credit Agreement §§ 12.02, 12.03.

7

mechanical and administrative duties, to attempt to block the Required Lenders' authorized conduct and chosen transaction structure. Contrary to *Columbia Pictures Indus. v. Liberty Cable, Inc.*, 919 F. Supp. 685, 690 (S.D.N.Y. 1996), on which Plaintiffs rely, in light of these limited duties, WSFS did not demonstrate the "indifference to present legal duty and utter forgetfulness of legal obligations" about which Plaintiffs complain. *Cf.* Opp. at 16. WSFS had no duty.

Second, even if WSFS did breach an obligation to stop the Sale (which it unequivocally did not), the Bankruptcy Court determined as a matter of law that the Required Lenders' conduct was authorized and the Agent had been instructed. Surely Plaintiffs cannot be contending that the Bankruptcy Court would have ordered an impermissible transaction to close – particularly when the issue was squarely before it in connection with the Emergency Motion. Based on the Bankruptcy Court's orders and findings concerning the Sale and the closing of the Sale, WSFS obviously did not "evince a reckless disregard for the rights of [P]laintiffs." *Retty Fin., Inc. v. Morgan Stanley Dean Witter & Co.*, 293 A.D.2d 341, 341 (1st Dep't 2002).

While issues of gross negligence may often be reserved for the fact finder, here, Plaintiffs implausibly and conclusorily allege gross negligence in a self-serving attempt to sidestep the exculpation provisions of Sections 12.02(a) and 12.10(c) of the Credit Agreement. In view of the authorized actions pursued by the Required Lenders, WSFS' lack of any relevant duty, and the Bankruptcy Court's determinations throughout the Chapter 11 case, Plaintiffs' attempts to bootstrap a gross negligence claim onto a breach of contract claim must fail – even on a motion to dismiss. *See, e.g.*, *Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*, No. 03-cv-1537 (MBM), 2003 WL 23018888, at *12 (S.D.N.Y. Dec. 22, 2003) (granting motion to dismiss based on conclusory allegations of bad faith and gross negligence where plaintiff alleged "no

specific actions by defendant evincing a reckless disregard for the rights of plaintiff or smacking of intentional wrongdoing"). In this regard, *Tevdorachvili v. Chase Manhattan Bank*, 103 F. Supp. 2d 632, 644 (E.D.N.Y. 2000), is instructive. The plaintiff pleaded a cause of action for breach of contract. But the court declined to find that simply adding a label of gross negligence would turn a breach of contract claim into gross negligence:

> [A] cause of action based on harm suffered due to reckless conduct must be supported by specific and particular allegations of extreme wrongdoing. Of course, no such allegations have been made here. A cause of action for breach of contract has been maintained. In the absence of factual allegations showing more, heated language and indignation will not suffice to bootstrap that cause of action into a cause of action for negligence, gross negligence, or recklessness.

*Id.* at 644. Plaintiffs allege nothing more than a standalone breach, with no allegations to support their assertion of recklessness or intentional wrongdoing.[6] Because Plaintiffs have alleged no specific facts that plausibly support their conclusory allegations of gross negligence, the exculpation clauses mandate dismissal of Plaintiffs' claims against WSFS.[7]

### V. THE CLAIMS ASSERTED AGAINST THE AGENT IN COUNT 3 FAIL BECAUSE REQUIRED LENDERS ARE PERMITTED TO DIRECT THE EXERCISE OF REMEDIES

Count 3 must fail because the transfer to NewCo of the right to credit bid was a proper exercise of remedies that could be orchestrated by Required Lenders pursuant to Section 7.1 of the Security Agreement. Whereas Plaintiffs assert that the Sale was a release of collateral without the necessary 100% Lender consent required by Section 13.12 of the Credit Agreement,

---

[6] *House of Eur. Funding I, Ltd. v. Wells Fargo Bank, N.A.*, No. 13 Civ. 519 (RJS), 2014 WL 1383703, at *10 (S.D.N.Y. Mar. 31, 2014), cited by Plaintiffs in support of their over-generalization that the gross negligence issue should not be decided on a motion to dismiss, illustrates the kind of allegations that might elevate a straightforward breach to the level of gross negligence. The defendant allegedly committed six separate breaches and concealed its actions via a deceptive scheme. *Id*.

[7] Because WSFS was not grossly negligent, Plaintiffs are required to indemnify WSFS for all fees, costs and expenses in connection with this action. *See* Credit Agreement §§ 12.06, 13.01(a)(iii)(a).

that argument is flatly belied by the express terms of Section 13.12 itself which make clear that the 100% requirement is qualified by action under other provisions of the Credit Documents. Here, the Required Lenders were directing the exercise of remedies under Section 7.1 of the Security Agreement, as they were permitted to do, and thus the 100% requirement of Section 13.12 does not apply.

Furthermore, Plaintiffs' arguments fail based on the terms of Section 363(f) of the Bankruptcy Code and the Bankruptcy Court's Sale Order. Indeed, in approving the Sale, the Bankruptcy Court denied all objections and ordered that "[t]hose parties who did not object or withdrew their objections to the Sale Motion are deemed to have consented to the Sale under section 363(f)(2) of the Bankruptcy Code." Brandon Decl., Ex. F, Sale Order ¶ 3. As Plaintiffs made no objection to the Sale and the Bankruptcy Court ruled that parties who did not object consented, then *a fortiori* they are precluded from attempting to assert here that one of the "preliminaries" to the Sale (namely, instruction to the Agent) was not complied with.[8] Plaintiffs' assertion of claims here flies in the face of the Bankruptcy Court's order that they consented and is contrary to public policy in favor of finality of bankruptcy sales. For all of these reasons, Count 3 must be dismissed.

## CONCLUSION

For the reasons stated herein and in WSFS' opening brief, WSFS respectfully requests that the Court grant WSFS' motion to dismiss both of Plaintiffs' claims against WSFS or,

---

[8] Plaintiffs rely exclusively on *Credit Agricole Corporate v. BDC Finance, LLC*, No. 651989/10, 2017 WL 375324 (N.Y. Sup. Ct. Jan. 20, 2017), which is thoroughly inapposite. It involved an agent which was an affiliate of the majority lenders, and which acted to obtain a priority for its affiliated lenders over other lenders that were not affiliates of the agent. Here, the Agent is not affiliated with any of the Lenders and all of the Lenders were treated equally. The Required Lenders did not receive a priority.

alternatively, transfer this case to the Bankruptcy Court, and grant WSFS such other and further relief as the Court deems just and proper.

Dated: October 15, 2021  
      New York, New York

By: /s/ *Madlyn Gleich Primoff*  
Madlyn Gleich Primoff  
Eric Avery Brandon  
FRESHFIELDS BRUCKHAUS DERINGER US LLP  
601 Lexington Ave., 31st Floor  
New York, NY 10022  
Telephone: (212) 277-4000  
Fax: (212) 277-4001  
madlyn.primoff@freshfields.com  
eric.brandon@freshfields.com

*Attorneys for Defendant Wilmington Savings Fund Society, FSB*