UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

KENNEDY LEWIS PARTNERS MASTER
FUND LP AND KENNEDY LEWIS
PARTNERS MASTER FUND II,

              Plaintiffs,

  -against-

ABRY PARTNERS, LLC, APEX CREDIT
PARTNERS LLC, CIFC ASSET
MANAGEMENT LLC, ELLINGTON
MANAGEMENT GROUP, L.L.C.,
TRIMARAN ADVISORS MANAGEMENT,
L.L.C., AND WILMINGTON SAVINGS
FUND SOCIETY, FSB,

              Defendants.
------------------------------------------------------------x

Case No. 21-cv-4690 (ALC)

ORAL ARGUMENT REQUESTED

# THE LENDER DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS OR TRANSFER VENUE

GIBSON, DUNN & CRUTCHER LLP
Mary Beth Maloney
David P. Salant
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000

*Attorneys for the Lender Defendants*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 3

I.     *Res Judicata* and Collateral Estoppel Apply as Plaintiffs' Claims "Could Have Been Raised," and a "Truly Identical" Issue Was Decided in the Bankruptcy Action. ................................................................................................................. 3

II.    Plaintiffs Are Not Exempt from the Parties' Broad No-Action Clause. ......................... 6

III.   Plaintiffs Make Flawed Allegations of Duty, Breach, Causation, and Damages. .......... 7

IV.   Plaintiffs' Claims Are "Core" to the Delaware Bankruptcy Proceeding. ....................... 9

CONCLUSION ............................................................................................................................. 10

**TABLE OF AUTHORITIES**

**CASES**

*Allen v. McCurry*,
   449 U.S. 90 (1980)...................................................................................................................4

*Allen v. N.Y.C. Hous. Auth.*,
   2016 WL 722186 (S.D.N.Y. Feb. 19, 2016)............................................................................4

*Argonaut P'shp., L.P. v. Bankers Tr. Co.*,
   1997 WL 45521 (S.D.N.Y. Feb. 4, 1997)................................................................................7

*Argosy Cap. Grp. III, L.P. v. Triangle Cap. Corp.*,
   2019 WL 140730 (S.D.N.Y. Jan. 9, 2019) ............................................................................10

*Audax Credit Opportunities Offshore Ltd. v. TMK Hawk Parent, Corp.*,
   No. 565123/2020, Dkt. No. 171, 72 Misc. 3d 1218(A) (Sup. Ct. N.Y. Cnty. 2021).................7

*Capmark Fin. Grp. Inc. v. Goldman Sachs Credit Partners L.P.*,
   2012 WL 698134 (S.D.N.Y. Mar. 5, 2012) ...........................................................................10

*In re Chrysler*,
   405 B.R. 84 (Bankr. S.D.N.Y. 2009)....................................................................................5, 9

*In re Clinton St. Food Corp.*,
   254 B.R. 523 (Bankr. S.D.N.Y. 2000)......................................................................................4

*Cohen v. Bd. of Ed. of E. Ramapo Cent. Sch. Dist.*,
   84 A.D.2d 536, 443 N.Y.S.2d 170 (1981) ...............................................................................4

*Credit Agricole Corp. v. BDC Fin., LLC*,
   2017 NY Slip Op. 30134(U) (Sup. Ct. N.Y. Cnty. 2017).........................................................5

*Deutsche Oel & Gas S.A. v. Energy Cap. Partners Mezzanine Opportunities Fund A, LP*,
   2020 WL 5814233 (S.D.N.Y. Sept. 30, 2020).......................................................................10

*EDP Med. Computer Sys., Inc. v. United States*,
   480 F.3d 621 (2d Cir. 2007).....................................................................................................3

*Gache v. Hill Realty Assocs., LLC*,
   2014 WL 5048336 (S.D.N.Y. Sept. 22, 2014)......................................................................3, 6

*Howe v. Bank of N.Y. Mellon*,
   783 F. Supp. 2d 466 (S.D.N.Y. 2011)......................................................................................6

*ICICI Bank Ltd. v. Essar Glob. Fund Ltd.*,
   565 B.R. 241 (S.D.N.Y. 2017)...............................................................................................10

*KeyBank Nat'l Ass'n v. Franklin Advs., Inc*,
   600 B.R. 214 (S.D.N.Y. 2019) ............................................................................................... 10

*Maharaj v. Bankamerica Corp.*,
   128 F.3d 94 (2d Cir. 1997) ....................................................................................................... 4

*Metro. W. Asset Mgmt., LLC v. Magnus Funding, Ltd.*,
   2004 WL 1444868 (S.D.N.Y. June 25, 2004) ......................................................................... 6

*Proctor v. LeClaire*,
   715 F.3d 402 (2d Cir. 2013) ..................................................................................................... 4

*ResCap Liquidating Tr. v. PHH Mortg. Corp.*,
   518 B.R. 259 (S.D.N.Y. 2014) ............................................................................................... 10

*Shah v. N.Y. State Off. of Mental Health*,
   523 F. App'x 828 (2d Cir. 2013) ........................................................................................ 3, 4

*In re Teltronics Servs., Inc.*,
   762 F.2d 185 (2d Cir. 1985) ..................................................................................................... 3

*Wilder v. World of Boxing LLC*,
   310 F. Supp. 3d 426 (S.D.N.Y. 2018) ..................................................................................... 9

*Zohar CDO 2003-1, Ltd. v. Patriarch P'ners, LLC*,
   620 B.R. 456 (S.D.N.Y. 2020) ............................................................................................... 10

**STATUTES**

28 U.S.C. § 157 ............................................................................................................................. 10

28 U.S.C. § 1404 ........................................................................................................................... 10

28 U.S.C. § 1412 ............................................................................................................................. 9

11 U.S.C. § 363 ............................................................................................................................... 5

**PRELIMINARY STATEMENT**

Plaintiffs' opposition reduces to this: they effectively admit their breach of contract claims are tied to the parties' compelled compliance with *Judge Sontchi's sale order,* not any voluntary act or omission by *the Lender Defendants*. Under Plaintiffs' theory of the case, Judge Sontchi ordered a bankruptcy sale not "consistent with" the parties' "contractual obligations," Opp'n 11–12, so the Lender Defendants should be found to have breached their contract, even though the Plaintiffs never raised any such issue before Judge Sontchi and the parties were then compelled to comply with his sale order. It is too little, too late for Plaintiffs to revisit that issue now and seek a do-over before this Court. Their theory fails as a matter of law for multiple reasons, and their case against the Lender Defendants must therefore be dismissed.

***First***, Plaintiffs' pleading is barred by *res judicata* and collateral estoppel. Plaintiffs do not dispute that they appeared and were represented by counsel through the litigation of the First and Second Sale Orders,[1] or that they could have but did not raise their key issue here: "whether Lender Defendants causing a transfer of the credit bid to NewCo, without instructing the Agent, was in violation of the Agreements," Opp'n 10 (citing Compl. ¶ 52). And Judge Sontchi *did* in fact decide the precise issue Plaintiffs raise here—whether the credit bid was sufficiently authorized under the Agreements—in response to the *Lender Defendants'* Emergency Sale Motion, without any objection from Plaintiffs. Plaintiffs cannot now conjure an inconsistent cause of action based on already-decided facts and arguments about the same agreements.

***Second***, the Complaint is barred for violating the Security Agreement's "No-Action" clause. Plaintiffs' request for an unprecedented extension of the "trustee-misconduct" exception to carve out contract disputes between creditors, Opp'n 15, is unsupported by fact or law. No

---

[1] Defined terms here are those used in the Lender Defendants' opening brief, ECF No. 48 ("Br.").

1

expansion of the trustee-misconduct exception is warranted here, where Plaintiffs are suing a fellow creditor and fail to plead any unequal treatment as to the distribution of sale proceeds.

*Third*, Plaintiffs cannot rescue their defective allegations of duty, breach, causation, or damages. Plaintiffs' theory of breach, that the Lender Defendants "should have instructed the Agent [Defendant] to credit bid the Loan," Opp'n 18, fails because the Bankruptcy Court ruled this authorization had already been given by the "Agent, on behalf of the [Lender Defendants]," Bkr. Dkt. 721 at 2 (Salant Decl. Ex. 12). Plaintiffs' assertion that the Lender Defendants did not undertake the "proper procedures" for instructing a credit bid, Opp'n 14 n.7, contradicts the contractual text, which does not require the Lender Defendants to "instruct" anyone to do anything in any particular way. Section 7.1 of the Security Agreement merely limits the Agent Defendant's powers to actions "instructed" by a majority of creditors. In any event, Plaintiffs admit Judge Sontchi *ruled that this instruction had been given*, either in fact or constructively, Opp'n 11, 19, and Plaintiffs fail to plead or offer support for their notion that an "instruction" cannot be judicially rendered. In all events, the question of "proper instruction" is wholly immaterial, as the transaction would have closed irrespective of the Lender Defendants' conduct.

*Finally*, transfer is warranted because the interpretation of Judge Sontchi's sale orders is "core" to the bankruptcy case, overcoming any presumption in favor of a forum selection clause. Plaintiffs' quarrels with Judge Sontchi's rulings, if not dismissed, should be taken up with him.

Plaintiffs' Complaint is not only legally defective, but precedentially dangerous. Allowing after-the-fact, collateral challenges to a bankruptcy sale in another court risks undermining the critical finality of Town Sports' sale order and charts an unprecedented roadmap for minority lenders to sue whenever they see fit, upending the core principle of equal sharing among lenders. Kennedy Lewis and the Lender Defendants ultimately received a 20%

equity share in the reorganized Town Sports, on an equal, pro rata basis.  The Court should reject this end-run with a dismissal with prejudice or transfer back to the Bankruptcy Court.

## ARGUMENT

**I.    *Res Judicata* and Collateral Estoppel Apply as Plaintiffs' Claims "Could Have Been Raised," and a "Truly Identical" Issue Was Decided in the Bankruptcy Action.**

*<u>Res judicata.</u>*  Conceding that bankruptcy sale orders are final judgments with a *res judicata* effect on all creditors, Br. 14–15, Plaintiffs assert a nonexistent legal requirement that "*res judicata* only applies if the earlier decision involved 'the same cause of action[.]'" Opp'n 10–11.  It is black-letter law that "*[r]es judicata* extends to all claims that '*were or could have been* raised'" in the previous action, and "does not require the precluded claim to actually have been litigated[.]" *EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 626 (2d Cir. 2007) (citations omitted).[2]  Plaintiffs fully participated in the proceedings in which the credit bid was litigated and resolved, Br. 7–12, and so even if Judge Sontchi had not specifically addressed the claimed "failure to instruct"—which he did—Plaintiffs' could and should have raised it then.

Plaintiffs now allege that they "possessed no breach of contract claim" "until *after* the Bankruptcy Court denied the Emergency Motion," Opp'n 12, which only proves the point.  The claimed breach does not arise out of a second transaction "subsequent to a prior action," *Shah v. N.Y. State Off. of Mental Health*, 523 F. App'x 828, 830 (2d Cir. 2013), but rather "accrued when the Bankruptcy Court approved the sale," and, therefore, could have been challenged directly or on appeal, *Gache v. Hill Realty Assocs., LLC*, 2014 WL 5048336, at *7 n.11 (S.D.N.Y. Sept. 22, 2014).  Plaintiffs plead no "subsequent" developments not already present in the Bankruptcy

---

[2]  Both *EDP Medical* and *Teltronics* (where *EDP Medical* draws its "same cause of action" quotation) barred as *res judicata* claims that were not, but could have been, brought in prior bankruptcy proceedings.  *See EDP Med.*, 480 F.3d at 627; *In re Teltronics Servs., Inc.*, 762 F.2d 185, 193 (2d Cir. 1985).

3

Court record, a key fact distinguishing their cited caselaw.[3]

Plaintiffs are also mistaken that Judge Sontchi did not consider in his rulings the underlying Credit and Security Agreements, the key documents governing creditor rights in an event of default. Opp'n 11. The documents were before him, and he heard extensive argument about them and referenced them in his rulings. *See, e.g.*, Bkr. Dkt. 777 at 27–28 (Salant Decl. Ex. 10) ("I am finding that the buyer has the authority to credit bid. . . . I think that is consistent with the documents."). Plaintiffs deny seeking to "undo" the bankruptcy sale, Opp'n 13, but their claim for money damages based on the details of the sale amounts to a "thinly disguised collateral attack on the judgment confirming the sale," which may be brought "only by the route provided for collateral attacks on judgments" and not in a consecutive action. *In re Clinton St. Food Corp.*, 254 B.R. 523, 531–32 (Bankr. S.D.N.Y. 2000) (citation omitted); *see* Br. 15.

**_Collateral Estoppel._** Plaintiffs' claims are also estopped because a "truly identical" issue was raised and litigated in the bankruptcy action. It is not the law, as Plaintiffs assert, that in demonstrating the "identical *issue* was raised in a previous proceeding," *Proctor v. LeClaire*, 715 F.3d 402, 414 (2d Cir. 2013), defendants must show the same literal *cause of action* was brought and litigated: "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit *on a different cause of action* involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (emphasis added). As Plaintiffs acknowledge, Opp'n 11 & 14 n.7, at the Emergency Sale

---

[3] The Plaintiffs in *Shah*, *Allen*, *Maharaj*, and *Cohen* alleged subsequent claims arising from new actions taken by defendants well *after* their first complaint was filed. *See Shah,* 523 F. App'x at 830 (second complaint alleged discrimination and retaliation years after dismissal of previous lawsuit); *Allen v. N.Y.C. Hous. Auth.,* 2016 WL 722186, at *5 (S.D.N.Y. Feb. 19, 2016) ("events underlying complaint . . . postdate[d] all prior litigation"); *Maharaj v. Bankamerica Corp.,* 128 F.3d 94, 97 (2d Cir. 1997) (second complaint based on facts relating to defendant's dissolution occurring after first complaint); *Cohen v. Bd. of Ed. of E. Ramapo Cent. Sch. Dist.*, 84 A.D.2d 536, 537, 443 N.Y.S.2d 170 (1981) (second action based on "events which occurred subsequent to the commencement of the prior proceeding").

4

Hearing, the Lender Defendants took the same factual and legal position Plaintiffs take now, citing the very contractual provisions Plaintiffs cite now, asserting that the sale could not close because the Lender Defendants had not given an instruction authorizing the credit bid. Judge Sontchi disagreed and ruled the credit bid had already been authorized, a result flatly inconsistent with Plaintiffs' claim here that Defendants failed to sufficiently authorize the credit bid.

Equally precluded is Plaintiffs' argument that compliance with the Bankruptcy Court's order effected an extraordinary "amendment" triggering Plaintiffs' consent right under Credit Agreement Section 13.12(a). As Judge Sontchi wrote, the credit bid was contributed pursuant to the Security Agreement, Bankruptcy Code § 363(k), and a court order, Salant Decl. Ex. 7 ¶ X, and therefore was an ordinary *remedy* under Section 7.1, not an amendment. It is simply wrong on the law that a credit bid is an amendment to a credit agreement, *see In re Chrysler*, 405 B.R. 84, 102–03 (Bankr. S.D.N.Y. 2009), and Plaintiffs' alleged "failure to instruct," even if true, is nothing like the lone, factually extreme case on which they rely.[4] Just as in *Chrysler*, where the court made abundantly clear that it is not an amendment or release of liens where the liens attach to the proceeds of the sale, Plaintiffs received their pro rata share of the NewCo equity. *Id.*

Without disputing that they were served with the briefings, attended the relevant hearings, and received the Bankruptcy Court's orders, Br. 7–12, Plaintiffs offer no authority for their bare assertion that they did not have a full and fair opportunity to raise their issues in the bankruptcy action. Opp'n 14–15. The Second Sale Order, which Plaintiffs say triggered their

---

[4] *Credit Agricole Corp. v. BDC Fin., LLC*, 2017 NY Slip Op. 30134(U) (Sup. Ct. N.Y. Cnty. 2017), addressed an abusive restructuring in which a defendant creditor, who controlled the administrative agent, took for itself an unfair amount of proceeds in a bankruptcy sale, in violation of a "pro rata" clause requiring equal treatment of all creditors. The court denied summary judgment, holding that this conduct plausibly effected an extraordinary remedy outside the governing agreements, requiring all creditors' consent. Here, in contrast, Plaintiffs and the Lender Defendants undisputedly received equal pro rata shares in the NewCo, Compl. ¶ 46, and Plaintiffs offer no reason and fail to plead why the bankruptcy sale and credit bid, commonplace remedies for defaults on loans, fall into this extraordinary category.

5

claims, Opp'n 14–15, should have prompted an objection or appeal, *Gache*, 2014 WL 5048336, at *7 n.11. Plaintiffs add no new arguments to those raised in the Emergency Sale Motion briefing and hearing, further proving that their position here was fully considered, and rejected, by the Bankruptcy Court. *See, e.g.*, Bkr. Dkt. 777 at 10–14 (Salant Decl. Ex. 10).

**II.     Plaintiffs Are Not Exempt from the Parties' Broad No-Action Clause.**

Plaintiffs misread the text of the No-Action clause, in which they waived not just the "the various remedies outlined in the Security Agreement vis-à-vis the Borrower," Opp'n 15, but also "any right individually to seek to enforce or to enforce this [Security] Agreement" unless (1) the majority of creditors (2) instructs the Agent to do so. Security Agreement § 7.1.[5] Plaintiffs' suit for breach of this agreement is plainly an effort "to seek to enforce" rights under that document, placing this lawsuit squarely within the No-Action clause's prohibitions.[6]

Plaintiffs are wrong that the "trustee-misconduct" exception should apply here. Opp'n 15–16. Courts have near-universally limited this exception to claims against a *trustee* (such as a collateral agent) on the premise that it would be "absurd" for creditors "to ask the Trustee to sue itself." *Quandrant*, 23 N.Y.3d at 566.[7] But "there is 'an important difference between asking

---

[5] Plaintiffs' theory that the "purpose" of no-action clauses is to protect *issuers* of debt from frivolous lawsuits, rather than fellow bondholders, Opp'n 15 n.8, is plucked out of context. *See Quadrant Structured Procs. Co. Ltd.*, 23 N.Y.3d 549, 567 (2014) (the "purpose of the no-action clause" is to "protect the majority interests by mandating that actions be channeled through the Trustee"). In any event, the No-Action clause is broader here, and contains no exceptions. Br. 7.

[6] Plaintiffs rely on inapposite cases where claims brought fell substantively outside the scope of a no-action clause. *See Quadrant Structured Prod. Co.*, 23 N.Y.3d at 561 (no-action clause barring claims relating to "indentures" did not bar claim relating to separate "securities," which clause did not mention "securities"); *Metro. W. Asset Mgmt., LLC v. Magnus Funding, Ltd.*, 2004 WL 1444868, at *4–5 (S.D.N.Y. June 25, 2004) (claims that trustee mismanaged trust collateral fell outside scope of no-action clause); *Howe v. Bank of N.Y. Mellon*, 783 F. Supp. 2d 466, 474 (S.D.N.Y. 2011) (no-action clause contingent by its terms upon an "Event of Default" did not bar claims arising prior in time to default).

[7] Plaintiffs' inapposite cases all involve suits against trustees. *See Howe*, 783 F. Supp. 2d at 474 (permitting suit "on claims arising out of the Trustee allegedly taking extra-contractual action"); *Metro.*

6

the trustee to sue itself—an 'absurd' requirement [the Court] presume[s] the parties did not intend—and asking it to sue a third party, even when the investor alleges wrongdoing by the trustee.'" *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing*, Inc., 837 F. Supp. 2d 162, 186 (S.D.N.Y. 2011) (citation omitted); *see* Br. 20 n.4.[8]  Limiting the trustee-misconduct exception to suits against trustees ensures the exception does not swallow the rule. *Id.* at 186.

Finally, even if the trustee-misconduct exception applied to Plaintiffs' suit against a fellow creditor, that would only excuse the "*instruction*" *requirement* of the No-Action clause, and not its "*majority rules*" *requirement*.  Plaintiffs are not, and have never been, the majority of lenders, the only group authorized to seek to enforce the agreement.  Without any judicial or contractual exception to the No-Action clause, Plaintiffs lack standing to bring this suit.[9]

## III. Plaintiffs Make Flawed Allegations of Duty, Breach, Causation, and Damages.

***Duty and Breach.***  To survive a motion to dismiss, Plaintiffs must specifically identify contractual provisions and the Lender Defendants' acts or omissions constituting a breach.  Br. 20; Opp'n 17.  Plaintiffs continue to fail both tasks.  Plaintiffs claim Lender Defendants breached Section 7.1 of the Security Agreement because they "should have instructed the Agent to credit bid the Loan," and, thereby, also breached Sections 12.10 and 13.12(a) of the Credit Agreement. Opp'n 17–18.  The contracts' plain text shows otherwise:

---

*W. Asset Mgmt., LLC*, 2004 WL 1444868, at *5 n.4 (alleged wrongdoing by trustee was "central issue"); *Argonaut P'shp., L.P. v. Bankers Tr. Co.*, 1997 WL 45521, at *19 (S.D.N.Y. Feb. 4, 1997) (same).

[8] Plaintiffs' single case where a lender was excused from a no-action clause and permitted to sue a fellow lender is inapposite.  Opp'n 16 n.10 & 11.  In *Audax Credit Opportunities Offshore Ltd. v. TMK Hawk Parent, Corp.*, No. 565123/2020, Dkt. No. 171, 72 Misc. 3d 1218(A) (Sup. Ct. N.Y. Cnty. 2021), the majority creditors unliterally *amended the no-action clause*, conduct the court found was designed in bad faith to hamstring the collateral agent and obtain advantage.  No such abusive conduct is alleged here.

[9] Plaintiffs' assertion that the No-Action clause applies only to the Security Agreement, and not the Credit Agreement, Opp'n 17 n.12, is irrelevant because Plaintiffs do not identify any provision of the Credit Agreement that the Lender Defendants allegedly breached.  *See infra* Section III.

7

- Security Agreement Section 7.1 empowers *the Agent Defendant* to undertake a remedy, such as acting to realize on the collateral, upon instruction of the majority of lenders. By its terms, Section 7.1 sets forth rights and obligations of *the Agent Defendant*; it does not oblige the Lender Defendants to do anything.
- Credit Agreement Section 12.10(a) permits the Lender Defendants to bind all creditors by actions taken in accordance with the Credit Agreement and the other Security Documents and the exercise of powers set forth therein, *together with such other powers as are reasonably incidental thereto* (like negotiating the terms of the sale).[10] Plaintiffs must identify some other provision of the Credit Agreement that the Lender Defendants breached in order to plead a breach of Section 12.10(a).
- Credit Agreement, Section 13.12(a) addresses amendments to the Credit Agreement. It does not address exercise of remedies. A credit bid is a remedy, not an amendment, nor does it release liens because the liens attach to the proceeds of the sale.

Plaintiffs still cannot articulate anything the Lender Defendants did to violate these provisions. And even assuming that the text of Section 7.1 obligated the Lender Defendants to "instruct" the Agent Defendant to authorize credit bid, that is precisely what Judge Sontchi ruled to have taken place. Bkr. Dkt. 777 at 27 (Salant Decl. Ex. 10). Plaintiffs neither plead facts nor offer law for their presumption that an "instruction" under Section 7.1 must take some formal, standalone form, such as a letter or email from the Lender Defendants to the Agent Defendant, and could not have occurred as Judge Sontchi said: either in fact through the exchange of sale documents, or constructively through the parties' course of conduct.[11]

Finally, Plaintiffs' Section 13.12(a) argument, Opp'n 20, relies on the faulty premise that the Agent was not sufficiently "instructed" pursuant to Section 7.1 of the Security Agreement,

---

[10] The instruction to undertake a remedy is a majority lender decision and the Defendant Agent has no independent duty or ability to decide otherwise. The Credit Agreement makes clear that the Defendant Agent's duties are "mechanical and administrative in nature" and that the Defendant Agent "shall not have any duties or responsibilities except those expressly set forth in this Agreement and in the other Credit Documents." Credit Agreement § 12.02. Given the Agent's limited duties and inability to act without majority direction, it was the majority lenders' prerogative to negotiate the terms of a credit bid.

[11] Plaintiffs misleadingly imply that the Lender Defendants acted in some affirmative way to complete the bankruptcy sale, such as "credit bidding the Loan" and "under[taking] activity that was limited solely to the Agent." Opp'n 18. This is not what is alleged, and not what happened. It was Judge Sontchi who ruled the credit bid was authorized and the sale should go through. The Lender Defendants did nothing more than accede to Judge Sontchi's self-effectuating ruling.

8

thereby effecting an amendment of the Credit Agreement without Plaintiffs' consent. Plaintiffs blithely evade *In re Chrysler*, an on-point case holding that the entry of a sale order and transfer of collateral do not implicate a provision requiring all lenders' consent to amend the agreement, even when minority creditors strongly disagree with the terms. 405 B.R. 84, 102–03 (Bankr. S.D.N.Y. 2009) (citing cases). Far from presenting a "nearly identical scenario," Opp'n 20, *Credit Agricole's* extreme facts demonstrate the high bar for an individual creditor to overcome a "majority rules"-based agreement: abusive, affirmative conduct by the majority violating the pro rata sharing clause of a credit agreement, which Plaintiffs do not plead. *See supra* note 4.

***Causation and damages***. Plaintiffs admit that they do not seek to upend the sale of Town Sports. Opp'n 13. Their grievances regarding the economic terms of the sale is wholly unconnected from the alleged breach: a procedural "failure to instruct."[12] The transaction would have gone through whether or not the Lender Defendants sent the Agent Defendant a perfunctory "instruction," draining Plaintiffs' claims of any possible damages. And Plaintiffs' harping on the "Agent's sole authority to dispose of the collateral," Opp'n 19, to advance a hypothesis that the Agent Defendant could have unilaterally stopped the deal by defying a court order, Opp'n 21, is unsupported and absurd in light of its purely ministerial rule.[13] *See supra* note 10.

## IV. Plaintiffs' Claims Are "Core" to the Delaware Bankruptcy Proceeding.

Plaintiffs do not dispute that their action "could have been brought" in the District of Deleware, Opp'n 24, and are wrong asserting 28 U.S.C. § 1412 does not govern this transfer

---

[12] Plaintiffs' hypothesizing about a better sale outcome, Opp'n 21—especially when they received 20% of the emerging company (that still operates)—is beside the point: The Lender Defendants were invested with authority to arrange the sale and the alternative was liquidation. *See* Compl. ¶ 46; Salant Decl. Ex. 10 at 5. *Wilder v. World of Boxing LLC*, 310 F. Supp. 3d 426, 447 (S.D.N.Y. 2018), a wildly inapposite case, indeed rejected a similarly tortured theory of causation.

[13] The Securities Agreement's grant of all "reasonably incidental" powers, Credit Agreement § 12.10(a), covers "instruct[ing]" the Agent as needed and "contradicts" nothing in the agreements. Opp'n 19 n.14.

9

motion, *id.* at 22.  Claims are "'core' to a bankruptcy proceeding . . . if they require a court to interpret a bankruptcy court order." *Deutsche Oel & Gas S.A. v. Energy Cap. Partners Mezzanine Opportunities Fund A, LP,* 2020 WL 5814233, at *9 (S.D.N.Y. Sept. 30, 2020) (citing cases); *see also* 28 U.S.C. § 157(b)(2)(N).  In *Deutsche Oel*, for example, Judge Abrams granted the motion to transfer notwithstanding a forum selection clause because defendant's "actions during the bankruptcy proceeding" were "core" to that case.  *Id*; *see also Argosy Cap. Grp. III, L.P. v. Triangle Cap. Corp.*, 2019 WL 140730, at *7 (S.D.N.Y. Jan. 9, 2019).[14]

Plaintiffs' Complaint demands interpretation of Judge Sontchi's Sale Orders, specifically, whether the Second Sale Order fully authorized the credit bid or prompted a procedural default.  That Plaintiffs now admit the Second Sale Order triggered their breach of contract claim, Opp'n 3, 12, only proves the centrality of the Bankruptcy Court's order to the Complaint.[15]

28 U.S.C. § 1404 also grants the Court discretion to transfer.  Judicial economy, the interests of justice, and the interests of uniformity of decisions between courts all weigh heavily in favor of transfer.  Br. 23–25.  Should Plaintiffs' claims survive, they should be transferred.

## CONCLUSION

For the foregoing reasons, the Lender Defendants respectfully request dismissal of the Complaint with prejudice, or, in the alternative, transfer the action to the District of Delaware.

---

[14]  *Cf. ICICI Bank Ltd. v. Essar Glob. Fund Ltd.*, 565 B.R. 241, 249 (S.D.N.Y. 2017) (contract action non-core because it "depend[s] neither on bankruptcy law nor on bankruptcy jurisdiction") (citation omitted); *Zohar CDO 2003-1, Ltd. v. Patriarch P'ners, LLC*, 620 B.R. 456, 464 (S.D.N.Y. 2020) (contract and tort claims non-core because "disputes arising from those contracts [] precede[d] the bankruptcy" and involved non-parties to the bankruptcy); *KeyBank Nat'l Ass'n v. Franklin Advs., Inc*, 600 B.R. 214, 236 (S.D.N.Y. 2019) (declining to transfer "core" breach-of-contract claim when forum selection clause expressly covered claims regarding bankruptcy proceedings).

[15]  This rationale holds for core proceedings even if the bankruptcy sale or plan had been ordered.  *See, e.g.*, *Deutsche Oel*, 2020 WL 5814233, at *4 (plan had been confirmed with retention of jurisdiction); *ResCap Liquidating Tr. v. PHH Mortg. Corp.*, 518 B.R. 259, 262 (S.D.N.Y. 2014) (plan had been confirmed).  *Cf. Capmark Fin. Grp. Inc. v. Goldman Sachs Credit Partners L.P.*, 2012 WL 698134, at *4 (S.D.N.Y. Mar. 5, 2012) (not addressing whether post-bankruptcy preference avoidance action was core).

Dated: New York, New York
October 15, 2021

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: <u>/s/ Mary Beth Maloney</u>

Mary Beth Maloney
David P. Salant

200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Email: mmaloney@gibsondunn.com
dsalant@gibsondunn.com

*Attorneys for the Lender Defendants*